1  Dale K. Galipo (SBN 144074)
   dalekgalipo@yahoo.com
2  Renee V. Masongsong (SBN 281819)
   rvalentine@galiolaw.com
3  **LAW OFFICES OF DALE K. GALIPO**
   21800 Burbank Blvd., Suite 310
4  Woodland Hills, CA 91367
   Tel: (818) 347-3333 / Fax: (818) 347-4118
5
   Darrell J. York (SBN 145601)
6  djylaw@gmail.com
   **LAW OFFICE OF DARRELL J. YORK**
7  299 S. Main Street, 13th Floor
   Salt Lake City, UT 84111
8  Tel: (661) 478-9640
9  Attorneys for Plaintiffs
10
11                    **UNITED STATES DISTRICT COURT**
                      **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as successor in interest to Ryan WILLCOX, deceased, | Case No: 2:24-cv-08790 |
| 14 | **COMPLAINT FOR DAMAGES** |
| 15 Plaintiffs, | 1. Denial of Medical Care (42 U.S.C. § 1983) |
| 16 v. | 2. Failure to Protect (42 U.S.C. § 1983) |
| 17 COUNTY OF LOS ANGELES; SERGIO ALOMA; ROBERT LUNA; DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); SERGEANT SANCHEZ (#514312); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, inclusive, | 3. Interference with Familial Relations (42 U.S.C. § 1983) |
| 18 | 4. Municipal Liability – Failure to Train (42 U.S.C. § 1983) |
| 19 | 5. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983) |
| 20 | 6. Negligence (wrongful death and survival) |
| 21 | 7. Negligence – Professional Medical Malpractice (wrongful death and survival) |
| 22 | 8. Failure to Summon Medical Attention (Cal. Gov. § 845.6) |
| 23 Defendants. | 9. Bane Act (Cal. Civ. Code § 52.1) |
| 24 | |
| 25 | |
| 26 | |
| 27 | **DEMAND FOR JURY TRIAL** |

28

**COMPLAINT FOR DAMAGES**

COME NOW, RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as a successor in interest to Ryan WILLCOX, deceased, for their Complaint against Defendants, COUNTY OF LOS ANGELES (including its Los Angeles County Sheriff's Department and its Twin Towers Correctional Facility); SERGIO ALOMA; ROBERT LUNA; DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); SERGEANT SANCHEZ (#514312); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, and hereby allege as follows:

**JURISDICTION AND VENUE**

1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.    Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

3.    The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

**INTRODUCTION**

4.    This civil rights and state tort action seek compensatory and punitive damages from the individual Defendants for violating various rights under the United States Constitution and California law in connection with the in-custody death of Plaintiffs' son, the deceased, Ryan WILLCOX, on or around January 11, 2024.

**PARTIES**

5.    At all relevant times, Ryan WILLCOX ("DECEDENT") was an individual residing in the County of Los Angeles.

6.    RICHARD WILLCOX ("WILLCOX") is an individual residing in the County of Los Angeles, California, and was at all relevant times the natural father of DECEDENT.  WILLCOX sues in his individual capacity as the father of DECEDENT and also as DECEDENT's successor in interest.  WILLCOX seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

7.    KATHLEEN ROSAS ("ROSAS") is an individual residing in the County of Los Angeles, California, and was at all relevant times the natural mother of DECEDENT.  ROSAS sues in her individual capacity as the mother of DECEDENT and also as DECEDENT's successor in interest.  ROSAS seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

8.    At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of political subdivision for the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, including the Los Angeles County Sheriff's Department ("LASD") and its agents and employees and the Twin Towers Correctional Facility ("TTCF") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.

9.    Defendants QUIROZ (#617296), GUERRERO (#656468), JIMENEZ (#659993), GURROLA (#629159), and RIOS (#661762) ("DEPUTY DEFENDANTS") are deputies for the LASD who, at all relevant times, were working

at the TTCF as correctional officers. DEPUTY DEFENDANTS were at all relevant times acting under color of law and within the course and scope of their duties as deputies for the LASD and the COUNTY. DEPUTY DEFENDANTS were acting with complete authority and ratification of their principal, Defendant COUNTY.

10.     Defendants SANCHEZ (#514312) and OHANDJANIAN (#466327) ("SERGEANT DEFENDANTS") are sergeants for the LASD who, at all relevant times, were working at the TTCF as supervisory correctional officers. SERGEANT DEFENDANTS were at all relevant times acting under color of law and within the course and scope of their duties as deputies for the LASD and the COUNTY. At all relevant times, SERGEANT DEFENDANTS were responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.

11.     Defendant SHERIFF ROBERT LUNA ("LUNA") at all relevant times was the sheriff of the LASD, the administrator of TTCF, and the ultimate policymaker for the LASD and COUNTY Jails.  At all relevant times, LUNA was the employer of DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS.  At all relevant times, LUNA was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.

12.     Defendant SHERIFF SERGIO ALOMA ("ALOMA") at all relevant times was the Assistant Sherrif of the LASD, the assistant administrator of TTCF, and the ultimate policymaker for the LASD and COUNTY Jails.  At all relevant times, ALOMA was the employer of DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS.  At all relevant times, ALOMA was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with

1 the laws of the United States and the State of California.

2      13.    At all relevant times, COUNTY was the employer of all named

3 Defendants.

4      14.    Defendants DOES 1-8 ("DOE CORRECTIONAL OFFICERS") are

5 deputies and correctional officers for the COUNTY, including at TTCF, including those

6 employed as nurses and other medical professionals, as well as officers responsible for

7 identifying medical and mental health issues and providing medical attention, medical

8 screening, and medical care to inmates and detainees. DOE CORRECTIONAL

9 OFFICERS include such officials working on behalf of COUNTY and hired through, or

10 employed directly by, a third-party contractor. DOE CORRECTIONAL OFFICERS

11 were at all relevant times acting under color of law within the course and scope of their

12 employment with the TTCF. DOE CORRECTIONAL OFFICERS were acting with

13 complete authority and ratification of their principal, Defendant COUNTY at all

14 relevant times.

15      15.    Defendant DOE 9 ("TTCF DOE SUPERVISOR") is a supervisory deputy

16 for the TTCF who at all relevant times was acting under color of law and within the

17 course and scope of his/her employment with the TTCF. At all relevant times, TTCF

18 DOE SUPERVISOR was acting with the complete authority and ratification of his/her

19 principal, Defendant COUNTY. TTCF DOE SUPERVISOR includes those charged

20 with coming up with the policies regarding medical care and medical screening,

21 providing training on medical care and medical screening, and supervising nurses and

22 medical professionals at TTCF.

23      16.    Defendant DOE 10 ("LASD DOE SUPERVISOR") is a managerial,

24 supervisorial, and policymaking employee of the LASD. At the time of the incident,

25 LASD DOE SUPERVISOR was acting under color of law, within the course and scope

26 of his/her duties for the LASD, and within the scope of his/her employment with the

27 COUNTY.  At all relevant times, LASD DOE SUPERVISOR was acting with the

28 complete authority and ratification of his/her principal, Defendant, COUNTY.

17.     Defendants DOES 1-10 are sued in their individual capacities.

18.     On information and belief, Defendants DOES 1-10 were residents of the County of Los Angeles, California.

19.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10, were acting on the implied and actual permission and consent of Defendant COUNTY, and LASD and the TTCF.

20.     The true names and capacities of DOES 1-10 are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek to amend this Complaint to completely identify these Defendants when their true names and capacities have been ascertained.

21.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.     Plaintiffs filed timely claims under Government Code Section 911.2 et al., and bring pendant actions under state law. WILLCOX'S claim was rejected on April 17, 2024.  ROSAS' claim was rejected on August 7, 2024.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

23.     On or around January 11, 2024, DECEDENT passed away, giving rise to Plaintiffs' claims alleged herein.

24.     Prior to DECEDENT passing away on January 11, 2024, DECEDENT was housed in Module 251, which houses inmates who are classified as "SMR" (Suicidal, Mental, Restraint), who are in administrative segregation due to suicidal thoughts and attempts.  Defendants knew that DECEDENT was suicidal and on suicide watch.

25.     On January 7, 2024, at approximately 4:00 p.m., Defendant RIOS

observed DECEDENT sitting on the floor of his cell (#13) in Module 251 of the TTCF. At that time, DECEDENT had a bedsheet or portion of a bedsheet wrapped around his neck and tied to the top portion of his bunk bed.  DECEDENT had attempted to commit suicide by hanging himself from the bunk bed using a bedsheet.  DECEDENT was unresponsive.

26.   After RIOS observed DECEDENT unresponsive in his cell on January 7, 2024, Defendants QUIROZ, GUERRERO, JIMENEZ and SANCHEZ responded to DECEDENT's cell.  QUIROZ lifted DECEDENT off the ground and GUERRERO cut the sheet.  On information and belief, when Defendants cut DECEDENT down, they did so callously and with no regard for his health, safety, and dignity.

27.   Los Angeles County Fire Department personnel responded at approximately 4:13 p.m.  At approximately 4:27 p.m., Fire Department personnel stated that they found a pulse on DECEDENT and then transported him to LAC + USC Hospital.

28.   DECEDENT survived until January 11, 2024, and he endured pain and suffering and medical expenses for approximately four days, between the time that he was found unresponsive and the time that he passed away.

29.   Pursuant to Title 15 and basic police training, suicide watch protocols further require frequent in-person monitoring of inmates at 15- or 20-minute intervals by jail staff.

30.   On information and belief, contrary to the suicide watch protocols, the cell into which DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS placed DECEDENT did not contain a clear door or large window.  Also on information and belief, contrary to the suicide watch protocols, the cell where DECEDENT was housed was not subject to full and continuous video monitoring of the entire cell by jail staff. On information and belief, the video feed was not continuously monitored by jail staff, including SERGEANT DEFENDANTS, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS.

31.    Also contrary to basic suicide watch protocols, the cell where DECEDENT was housed contained a bunk bed, enabling objects to be tied to the top bunk and contained bedding, including at least one bedsheet.

32.    On information and belief, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS did not monitor DECEDENT every 15 to 20 minutes as required by Title 15 and did not otherwise perform the required welfare checks.  On information and belief, the Defendants in charge of performing the Title 15 welfare checks on DECEDENT failed to perform these checks due to improper internet usage and absconding of their duties.

33.    On information and belief, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS performed an inadequate mental health evaluation of DECEDENT, including failing to prescribe DECEDENT mental health medication and/or discontinuing his mental health medication.  Based on this cursory and inadequate evaluation, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS did not comply with basic suicide watch protocols. On information and belief, these officials failed to ensure items that could be used for self-harm were removed from the cell, including the bedsheet, failed to ensure more frequent monitoring of DECEDENT, and failed to ensure that any additional medical or mental health attention was provided to DECEDENT.

34.    These failures to increase the frequency of monitoring of DECEDENT or move him to a suicide watch protocol–compliant cell was due in part to the dismissal of DECEDENT's statements that he intended to commit suicide, and their knowing failure to communicate DECEDENT's suicidal ideation to other LASD and/or TTCF officials.

35.    The failure of the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training, directly resulted in DECEDENT's death.  Had DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and/or DOE CORRECTIONAL OFFICERS done so,

they would have found DECEDENT within enough time to provide life-saving medical attention.

36.    Defendants were negligent in their conduct, including but not limited to negligence in TTCF procedures for screening, intake and housing of those in need of mental and medical health care, those who verbalize suicidal threats or ideation, and those who otherwise present identifiable suicide risks. Defendants DEPUTY DEFENDANTS, and DOE CORRECTIONAL OFFICERS were negligently trained by SERGEANT DEFENDANTS with respect to providing mental and medical care to inmates suffering from mental illness and presenting suicide risks.

37.    Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

38.    Each of the named and unnamed Defendants were integral participants in the denial of medical and mental health care, the failure to protect DECEDENT, the negligent treatment of DECEDENT, and other violations of DECEDENT's rights, or, alternatively, failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations.

**FIRST CLAIM FOR RELIEF**

**Denial of Medical Care (42 U.S.C. §1983)**

**(All Plaintiffs Against DEPUTY DEFENDANTS, LUNA, ALOMA, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS)**

39.    Plaintiffs repeat and re-allege each and every allegation in the foregoing

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

paragraphs of this Complaint with the same force and effect as if fully set forth herein.

40.    As alleged above, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS had actual knowledge of DECEDENT's suicidal ideations and related mental health needs based on DECEDENT's suicidal statements.

41.    DECEDENT was reliant on Defendants and other prison officials to provide medical care to him, including medical care in the form of suicide prevention.

42.    Despite Defendants having actual knowledge of DECEDENT's suicidal ideations at the time of and following DECEDENT's booking at TTCF, on information and belief, DECEDENT was not properly and adequately screened by a Registered Nurse or any other medical or mental health professional during intake to determine his fitness for incarceration. The mental health evaluation that DECEDENT did receive was cursory, inadequate, and did not comply with basic police training and TTCF protocols regarding handling situations where an inmate states that he is suicidal. DECEDENT was not given appropriate mental health medication and/or had his medication discontinued.

43.    Despite Defendants having actual knowledge of DECEDENT's suicidal ideations, DECEDENT was improperly housed at TTCF, including in that he was not placed in a continuously monitored cell, and that items such as DECEDENT's bedsheets, with which he could (and did) harm himself, were not removed from DECEDENT's cell.

44.    DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating DECEDENT's suicidal ideations. By not treating DECEDENT's suicidal ideations, Defendants caused DECEDENT's injury and death.

45.    DECEDENT's medical need was serious, in that the failure to treat DECEDENT's suicidal ideations and desire to harm himself resulted in DECEDENT's death. His need was obvious, in that he stated that he was suicidal and presented a suicidal affect.

46.    DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT or place him in an adequately monitored cell and failed to otherwise properly and promptly address his suicidal ideations. DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS took no actions to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself. These actions and omissions on the part of Defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial and obvious.

47.    The failure of the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training, directly resulted in DECEDENT's death.

48.    Had DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and/or DOE CORRECTIONAL OFFICERS done so, they would have found DECEDENT within enough time to provide life-saving medical attention.

49.    DECEDENT was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at TTCF.  In doing the acts complained of, Defendants deprived DECEDENT of urgently needed medical care in violation of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

50.    Defendants knew that failure to provide timely medical treatment to DECEDENT could result in DECEDENT harming or killing himself, but disregarded

that serious medical need, directly causing DECEDENT great bodily harm and death.

51.   DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS were deliberately indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention in the form of suicide prevention was provided to DECEDENT at TTCF as described herein.

52.   As alleged above, Defendants also failed to provide sufficient and immediate medical attention to DECEDENT after he hanged himself.

53.   Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of DECEDENT. Defendants' conduct served no legitimate penological purpose.

54.   The denial of medical care by Defendants deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

55.   Defendants' conduct as alleged above violated the Eighth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment.  The denial of medical care to DECEDENT by OFFICER DEFENDANTS and SUPERVISOR DEFENDANTS was deliberately indifferent, malicious and sadistic and caused harm to DECEDENT and served no penological purpose. The denial of medical care to DECEDENT offended evolving standards of decency and was an unnecessary and wanton infliction of pain.

56.   DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS are liable for the denial of medical care to DECEDENT, and for his injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent

these violations.

57.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died and lost his earning capacity.

58.     Also as a direct and proximate cause of the acts of Defendants, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

59.     The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

60.     Plaintiffs bring this claim as successors in interest to DECEDENT and seek survival damages under this claim. Plaintiffs seek damages, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## SECOND CLAIM FOR RELIEF

### Failure to Protect (42 U.S.C. §1983)

### (All Plaintiffs Against DEPUTY DEFENDANTS, SERGEAN DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS)

61.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62.     Defendants' conduct as alleged above violated the Eighth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment.  Under *Farmer v. Brennan*, 511 U.S. 825, 832, (1994), "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." (internal citations omitted). Prison officials

must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984).  This includes: (1) placing DECEDENT in a cell that was not continuously monitored when DECEDENT was suffering from mental illness(es) and having suicidal ideation; (2) placing DECEDENT in a cell that contained bunk beds and a bedsheet, in violation of basic suicide watch protocols, which he used to foreseeably hang himself; (3) not providing DECEDENT with proper medical screening for fitness for incarceration; (4) not addressing DECEDENT'S medical/mental health emergency; (5) failure to summon medical/mental health assistance for DECEDENT both before and after he hung himself.

63.    Defendants made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to protect DECEDENT from this risk despite obvious consequences of not acting upon DECEDENT's suicidal ideations, and by not taking action to protect DECEDENT from his suicidal ideations, Defendants caused DECEDENT's injury and death.

64.    DECEDENT's risk of harm was serious, in that the failure to respond to DECEDENT's suicidal ideations and desire to harm himself resulted in DECEDENT's death.  Defendants were on notice that DECEDENT was suicidal and on notice that suicidal inmates attempt to commit suicide using bedsheets.

65.    DECEDENT was entitled to receive protection from the known risk of harm to his life while in the care and custody of the COUNTY while detained/incarcerated at TTCF. In doing the acts complained of, Defendants failed to protect DECEDENT from a known risk of serious harm in violation of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

66.    Defendants knew that failure to protect DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious risk, directly causing DECEDENT great bodily harm and death.

67.    Each of the several aforementioned actions and omissions of Defendants

along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to DECEDENT. Defendants' conduct served no legitimate penological purpose.

68.    Defendants DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, LUNA, and ALOMA are liable for the failure to protect DECEDENT, and for his injuries and death, either because they were integral participants in the failure to protect, or because they failed to intervene to prevent such violations.

69.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pre-death pain and suffering, and then died and lost his earning capacity.

70.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

71.    The conduct of DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, LUNA, and ALOMA was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

72.    Plaintiffs bring this claim as successors in interest to DECEDENT and seek survival damages under this claim. Plaintiffs seek damages, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## THIRD CLAIM FOR RELIEF

### Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)

### (All Plaintiffs Against DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, LUNA, and ALOMA)

73.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

74.    Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with their son, DECEDENT.

75.    As alleged above, Defendants had actual knowledge of DECEDENT's suicidal ideations and intentions, yet failed to take necessary steps to protect DECEDENT from harm, including by placing him in a cell with a clear door or large window on the door allowing a full view of the cell from the hall outside; that was visible via a continuous remote video feed that is continually monitored by jail staff; that contained no elevated objects/locations to which items may be tied; that contained no objects that are commonly used to engage in self-harm or suicide attempts, such as shoelaces, ropes, cords, bedsheets, and sharp objects; and where DECEDENT would be monitored in person at 15- or 20-minute intervals by jail staff.  Defendants were on notice that DECEDENT was suicidal and on notice that suicidal inmates attempt to commit suicide using bedsheets.

76.    Defendants further failed to secure adequate medical or mental health treatment for DECEDENT or provide same, as alleged above, despite their knowledge of DECEDENT's serious need for such care. Defendants were on notice that DECEDENT was suicidal and on notice that suicidal inmates attempt to commit suicide using bedsheets.

77.    These actions of Defendants, along with other undiscovered conduct,

shock the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs.

78. Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT, their son.

79. As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, LUNA, and ALOMA, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

80. The conduct of DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, LUNA, and ALOMA was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

81. Plaintiffs bring this claim in their individual capacities and seek wrongful death damages under this claim, including for the loss of love, companionship, comfort, support, society, care, and sustenance of DECEDENT, as well as compensatory damages for their own emotional distress, mental anguish, and pain. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**(All Plaintiffs Against Defendants COUNTY, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOES 9-10)**

82. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

83. The acts of DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

84. SERGEANT DEFENDANTS, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS acted under color of law.

85. On information and belief, SERGEANT DEFENDANTS, LUNA, ALOMA and Defendants COUNTY and DOES 9-10 failed to properly and adequately train DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on subject matters COUNTY and DOES 9-10 knew the other Defendants were virtually certain to have to address in the course of their work for COUNTY, including but not limited to the provision of medical/mental health attention and the provision of protection to suicidal inmates/detainees.

86. The training policies of Defendant COUNTY, SERGEANT DEFENDANTS, LUNA, ALOMA were not adequate to train its deputies and correctional officers at LASD and the TTCF to handle the usual and recurring situations with which they must deal, including but not limited to medical/mental health screening during intake at TTCF, the provision of prompt and adequate medical/mental health care, and the implementation of suicide watch protocols for inmates/detainees who pose a known risk of self-harm.

87. Defendants COUNTY, SERGEANT DEFENDANTS, LUNA, ALOMA and DOES 9-10 were deliberately indifferent to the obvious consequences of their failure to train their officers adequately.

88.    Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

89.    The failure of SERGEANT DEFENDANTS, ALOMA, LUNA, COUNTY and DOES 9-10 to provide adequate training caused the deprivation of Plaintiffs' and DECEDENT's rights by DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS; that is, the failure of SERGEANT DEFENDANTS, ALOMA, LUNA, COUNTY and DOES 9-10 to train is so closely related to the deprivation of Plaintiffs' and DECEDENT's rights as to be the moving force that caused their ultimate injuries.

90.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Accordingly, Defendants COUNTY, LUNA, SERGEANT DEFENDANTS, ALOMA and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

91.    Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Policy, or Practice

### (42 U.S.C. § 1983)

### (All Plaintiffs Against Defendants SERGEANT DEFENDANTS, LUNA, ALOMA, COUNTY and DOES 9-10)

92.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

93.    DOE DEFENDANTS, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY, including unconstitutional policies of not providing medical/mental health care or immediate screening by a nurse to evaluate the overall fitness of those in custody for incarceration; of mishandling situations with individuals who suffer from mental health issues; and of failing to follow suicide watch protocols.  This includes (1) placing DECEDENT in a cell that was not continuously monitored when DECEDENT was suffering from mental illness(es) and having suicidal ideation; (2) placing DECEDENT in a cell that contained bunk beds and a bedsheet, in violation of basic suicide watch protocols, which he used to foreseeably hang himself; (3) not providing DECEDENT with proper medical screening for fitness for incarceration; (4) not addressing DECEDENT'S medical/mental health emergency; (5) failure to summon medical/mental health assistance for DECEDENT both before and after he hung himself.

94.    Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*,

1  United States District Court, Central District of California, Case No. 15-5903.  On

2  information and belief, since 2023, there have been approximately 60 in-custody deaths

3  at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on

4  notice that inmates on suicide might try to commit suicide using a bedsheet to hang

5  themselves.

6      95.    On information and belief, DEPUTY DEFENDANTS and DOE

7  CORRECTIONAL OFFICERS were not disciplined, reprimanded, retrained,

8  suspended, or otherwise penalized in connection with DECEDENT's death.

9      96.    By reason of the aforementioned acts and omissions, Plaintiffs have

10  suffered the loss of love, companionship, affection, comfort, care, society, training,

11  guidance, and past and future support of DECEDENT. The aforementioned acts and

12  omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and

13  death.

14      97.    Defendants COUNTY and DOES 9-10, together with various other

15  officials, whether named or unarmed, had either actual or constructive knowledge of the

16  deficient policies, practices and customs alleged in paragraphs above. Despite having

17  knowledge as stated above, these Defendants condoned, tolerated and through actions

18  and inactions thereby ratified such policies. Said Defendants also acted with deliberate

19  indifference to the foreseeable effects and consequences of these policies with respect

20  to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly

21  situated.

22      98.    Furthermore, the policies, practices, and customs implemented,

23  maintained, and still tolerated by Defendants COUNTY, SERGEANT DEFENDANTS,

24  ALOMA, LUNA and DOES 9-10 were affirmatively linked to and were a significantly

25  influential force behind the injuries of DECEDENT and Plaintiff.

26      99.    By reason of the aforementioned acts and omissions, Plaintiffs have

27  suffered loss of love, companionship, affection, comfort, care, society, training,

28  guidance, and past and future support of DECEDENT. The aforementioned acts and

21

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendants COUNTY, LUNA, SERGEANT DEFENDANTS, ALOMA and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

100.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacity and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF

### Negligence – Wrongful Death and Survival

### (All Plaintiffs Against All Defendants)

101.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

102.   Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes providing prompt and adequate medical and mental health care to individuals in their custody, identifying and handling medical and mental health issues, screening inmates for physical fitness for incarceration, determining housing classification status for inmates, protecting inmates/detainees from reasonably foreseeable harm, and ensuring that all suicide watch protocols are followed.  Suicide watch protocols include ensuring that inmates on suicide watch do not have bunk beds and bedsheets in their cell and that inmates on suicide watch are continuously monitored, no less than every 15 to 20 minutes.

103.   Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

ALOMA, LUNA and DOE CORRECTIONAL OFFICERS breached their duty of care. The actions and inactions of Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, LUNA, ALOMA, and DOE CORRECTIONAL OFFICERS were negligent and reckless, including but not limited to, the neglect tactics and handling of the situation with DECEDENT, including failing to identify serious medical and mental health issues, failing to provide prompt medical and mental health care to DECEDENT, failing to house DECEDENT in a suicide-watch compliant cell, and failing to take reasonable steps to prevent DECEDENT's death by suicide after DECEDENT advised them of his suicidal intentions and DECEDENT was placed on suicide watch. Moreover, SERGEANT DEFENDANTS, LUNA, ALOMA, COUNTY and DOES 9-10 failed to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT.

104.   Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

105.   DECEDENT's death was foreseeable and preventable.

106.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be

1   so deprived for the remainder of their natural lives.

2   107.   The COUNTY is vicariously liable for the wrongful acts of DEPUTY

3   DEFENDANTS, LUNA, ALOMA, SERGEANT DEFENDANTS, and DOE

4   CORRECTIONAL OFFICERS pursuant to section 815.2(a) of the California

5   Government Code, which provides that a public entity is liable for the injuries caused

6   by its employees within the scope of employment if the employee's act would subject

7   him or her to liability.

8   108.   Plaintiffs bring this claim as successors in interest to DECEDENT and in

9   their individual capacities and seek survival and wrongful death damages under this

10  claim, including for DECEDENT's pain and suffering, loss of earning capacity, and

11  loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love,

12  companionship, guidance, advice, and support.

13

14                        **SEVENTH CLAIM FOR RELIEF**

15                **Professional Negligence – Medical Malpractice**

16           **California Government Code 845.6 (wrongful death and survival**

17                     **(All Plaintiffs Against All Defendants)**

18  109.   Plaintiffs repeat and re-allege each and every allegation in the foregoing

19  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

20  110.   The SERGEANT DEFENDANTS, DEPUTY DEFENDANTS and DOE

21  CORRECTIONAL OFFICERS who performed the cursory and inadequate mental

22  health evaluation were aware of DECEDENT's medical and mental health emergency

23  in the form of suicidality, in that DECEDENT repeatedly made them aware of his

24  suicidal ideations and intentions to kill himself. Accordingly, proper examination,

25  diagnosis, treatment, and care for DECEDENT was essential to the preservation of

26  DECEDENT's life.

27  111.   Defendants negligently failed to exercise the proper degree of knowledge,

28  skill, and competence in examining, diagnosing, treating, and caring for DECEDENT,

including but not limited to, the failure to conduct a proper medical assessment of DECEDENT; and the failure to adequately monitor and supervise DECEDENT; the failure to remove bunk beds and bedsheets from DECEDENT's cell; the failure to summon immediate emergency medical assistance for DECEDENT.

112.  DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS placed DECEDENT in a cell that contained a bunk bed and a bedsheet that he would foreseeably use and ultimately did use to hang himself. On information and belief, DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS did not perform regular checks on DECEDENT's cell at the required 15-to-20-minute intervals.  This was below the standard of any medical professional, who had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise. COUNTY medical providers, including DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS, had a duty to DECEDENT to provide approximate and established standard of medical care. DECEDENT was a patient to which a duty is owed.

113.  As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

114.  The COUNTY is vicariously liable for the wrongful acts of ALOMA, LUNA, SERGEANT DEFENDANTS, DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or

her to liability.

115.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support.

## EIGHTH CLAIM FOR RELIEF

**Failure to Summon Medical Care (Cal. Gov. Code § 845.6) (wrongful death and survival)**

**(All Plaintiffs Against All Defendants)**

116.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

117.   Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care.

118.   Defendants were aware of DECEDENT's medical emergency, in that DECEDENT was ultimately placed on suicide watch. In other words, as alleged above, DECEDENT's medical emergency was obvious and substantial. Defendants are not entitled to immunity where the inmate is in obvious need of medical care.

119.   Despite Defendants' actual knowledge that DECEDENT was in need of immediate medical and mental care in the form of suicide prevention as alleged above, Defendants failed to (1) conduct a proper medical and mental health assessment and/or suicide evaluation of DECEDENT, including failing to prescribe him any necessary mental health medication or inappropriately discontinuing his mental health medication; (2) summon immediate emergency medical assistance for DECEDENT, both before and

after he was found unresponsive; (3) place DECEDENT in a suicide watch compliant cell when he was known to be suicidal and have a propensity for self-harm, including placing him in a cell with bedsheet(s) and a bunk bed, which DECEDENT foreseeably used to hang himself; (4) adequately monitor and supervise DECEDENT at the required 15 to 20 minute intervals; (5) recognize and identify indications of suicidal tendencies.

120.    The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) further states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care.

121.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

122.    Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this

claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, and funeral and burial expenses.

## NINTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### (All Plaintiffs Against All Defendants)

123.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

124.   California Civil Code Section 52.1 ("the Bane Act"), prohibits any person from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

125.   Here, Defendants DEPUTY DEFENDANTS, LUNA, ALOMA, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS acted with reckless disregard for DECEDENT's constitutional rights as set forth above. In particular, Defendants had specific knowledge of DECEDENT's suicidal ideation and intention to harm himself but failed to take action to protect him, demonstrating reckless disregard for DECEDENT's substantive due process rights.

126.   Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang

1   themselves.  DECEDENT's death by suicide was foreseeable.

2       127.   When Defendants engaged in their misconduct and inactions as alleged

3   above—including failing to provide medical care and mental health treatment to

4   DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm,

5   even when Defendants had direct information that DECEDENT desired to harm or kill

6   himself—Defendants acted with reckless disregard for DECEDENT'S constitutional

7   rights, including his constitutional right to timely and adequate medical attention in the

8   form of suicide prevention and also after he hanged himself.

9       128.   The conduct of Defendants as alleged above was a substantial factor in

10  causing Plaintiffs' and DECEDENT's harms, losses, injuries, and damages.

11      129.   The COUNTY is vicariously liable for the wrongful acts of all named

12  Defendants pursuant to section 815.2(a) of the California Government Code, which

13  provides that a public entity is liable for the injuries caused by its employees within the

14  scope of the employment if the employee's act would subject him or her to liability.

15      130.   The conduct of Defendants DEPUTY DEFENDANTS, LUNA, ALOMA,

16  SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS was

17  malicious, wanton, oppressive, and accomplished with a conscious disregard for

18  DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive

19  damages as to the individual Defendants.

20      131.   As a direct and proximate result of the aforementioned conduct,

21  DECEDENT suffered injuries, including pain and suffering, and then died, losing his

22  earning capacity. Also, as a direct and proximate cause of the acts of Defendants as

23  alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs

24  also have been deprived of the life-long love, companionship, comfort, support, society,

25  care and sustenance of DECEDENT, and will continue to be so deprived for the

26  remainder of their natural lives.

27      132.   Plaintiffs bring this claim as successors in interest to DECEDENT and in

28  their individual capacities and seek survival and wrongful death damages under this

claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, and funeral and burial expenses on this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty of $25,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants County of Los Angeles; Robert Luna; Sergio Aloma; Deputy Quiroz (#617296); Deputy Guerrero (#656468); Deputy Jimenez (#659993); Sergeant Sanchez (#514312); Deputy Gurrola (#629159); Deputy Rios (#661762); Sergeant Ohandjanian (#466327), and DOES 1-10, as follows:

      (a) For compensatory damages and whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

      (b) For funeral and burial expenses, and loss of financial support;

      (c) For pre-death pain and suffering, and loss of enjoyment of life according to proof at trial;

      (d) For punitive damages against the individual Defendants in an amount to be proven at trial;

      (e) For statutory damages;

      (f) For interest;

      (g) For reasonable attorney's fees, including litigation expenses;

      (h) For costs of suit; and

      (i) For such further other relief as the Court may deem just, proper, and appropriate.

Dated: October 11, 2024           LAW OFFICES OF DALE K. GALIPO
                                      LAW OFFICE OF DARRELL J. YORK

                                         *s/ Dale K. Galipo*
                                    Dale K.  Galipo
                                    Renee V. Masongsong
                                    Darrell J. York
                                    Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully submitted,

Dated: October 11, 2024          LAW OFFICES OF DALE K. GALIPO
                                 LAW OFFICE OF DARRELL J. YORK


                                        *s/ Dale K. Galipo*
                                 _____
                                 Dale K.  Galipo
                                 Renee V. Masongsong
                                 Darrell J. York
                                 Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL