Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galiolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Darrell J. York (SBN 145601)
djylaw@gmail.com
**LAW OFFICE OF DARRELL J. YORK**
299 S. Main Street, 13th Floor
Salt Lake City, UT 84111
Tel: (661) 478-9640

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as successor in interest to Ryan Willcox, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES; SERGIO ALOMA; ROBERT LUNA; DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); SERGEANT SANCHEZ (#514312); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:24-cv-08790-SB-MAR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFFS' COMPLAINT FOR DAMAGES; PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT** <br><br> Date:       March 28, 2025 <br> Time:       8:30 a.m. <br> Courtroom: 6C |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………....1

II.     LEGAL STANDARD…………………………………………………..…2

III.    ARGUMENT…………………………………………………………...4

        A. Plaintiffs' 42 U.S.C. §1983 Claims (1-5) Against Aloma and Luna…..4

        B. Plaintiffs' Claims Under 42 U.S.C. §1983 Against the Deputy
           Defendants, Sergeant Defendants, and Doe Defendants Are Sufficiently
           Pled………………………………………………………………..7

        C. Defendants Are Not Immune on Plaintiffs' State Law Claims………..9

        D. Plaintiffs' Medical Malpractice Claim Should Not be Dismissed…....11

        E. Plaintiffs' State Law Claim for Failure to Summon Medical Care is
           Sufficiently Pled………………………………………………....12

        F. Plaintiffs' Claim for Violation of the Bane Act Survives…………....13

IV.     CONCLUSION………………………………………………...…15

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………2, 3, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………..…….…..2, 9

*Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016)…………………….....5

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011)……………………………………………………………..…3

*Caldwell v. Montoya*, 10 Cal. 4th 972 (1995)…………………………....….9

*Capogrosso v. Sup. Ct.*, 588 F.3d 180 (3rd Cir. 2009)……………………..….3

*Conley v. Gibson*, 355 U.S. 41 (1957)……………………………….…..….3

*Creer v. Vallejo*, No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027 (E.D. Cal. June 17, 2015)……………………………………………………....5

*Davis v. Passman*, 442 U.S. 228 (1979)……………………………….....2

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655 (9th Cir. 1992)…………....4, 14

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)………..…14

*Erickson v. Pardus*, 551 U.S. 89 (2007)……………………………….....3

*Estate of Sanchez v. City of Stanislaus*, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019)………………………………………….....5

*Flores v. Natividad Medical Center*, 192 Cal. App. 3d 1106 (1987)…………..…..11

*Foman v. Davis*, 371 U.S. 178 (1962)…………………………….……..15

*Galvan v. City of Vacaville,* No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896 (E.D. Cal. Sept. 5, 2018)………………………………………………………...5

*Gillan v. City of San Marino*, 147 Cal. App. 4th 1033 (2007)………………....9

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)……………………..…5

*Guevara v. City of Los Angeles*, No. CV 14-08120 DDP, 2015 WL 224727 (C.D. Cal. Jan. 15, 2015)……………………………………………..…5

ii

*Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459 (N.D. Cal. Dec. 2, 2011)………………………………………………………………………....5

*Halcomb v. City of Sacramento*, No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357 (E.D. Cal. June 22, 2016)…………………………………………………..……..5

*Hudson v. Palmer,* 468 U.S. 517 (1984)…………………………………………….8

*Hunter v. City of Sacramento*, 652 F.3d 1225 (9th Cir. 2011)………………...……4

*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003)……………………………....2

*Johnson v. State of California*, 69 Cal. 2d 782 (1968)……………………………....9

*Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993)………………………………...3

*Martinez v. Newport Beach City*, 125 F3d 777 (9th Cir. 1997)…………………...15

*McKay v. City of Hayward*, 949 F. Supp. 2d 971 (N.D. Cal. 2013)……………...…4

*McCorkle v. City of Los Angeles*, 70 Cal. 2d 252 (1969)…………………….....10

*Mitchell v. Twp. of Pemberton*, No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466 (D.N.J. June 17, 2010)………………………………………………………………5

*N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578 (9th Cir. 1983)……………...3

*Osuna v. Cty. Of Stanislaus*, 392 F. Supp. 3d. 1162 (E.D. Cal. 2019)……………...5

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)………………………………....5

*Ownes v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001)………....14

*Paratt v. Taylor*, 451 U.S. 527 (1981)…………………………………………....4

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)………………………………5

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)………………....13

*Sanders v. Yuba County*, 247 Cal. App. 2d 748 (Ct. App. 1967)……………....10

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)………………..…3

*Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154 (9th Cir. 2019)……....…9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)…………………………….....3

*Tortorella v. Castro*, 140 Cal. App. 4th 1 (2006)…………………………..……12

*United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell* United States District Court, Central District of California, Case No. 15-5903……………………………………………………………………………..6, 14

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)…………………………...……..13

*Watson v. State of California*, 21 Cal. App. 4th 836 (1993)…………………….....11

*Waggy v. Spokane Cty.*, 594 F.3d 707 (9th Cir. 2010)……………………………....5

<u>Statutes</u>

California Government Code § 820.2……………………………………..……9

California Government Code § 844.6……………………………………………....10

California Government Code § 845.6……………………………………...…11, 12

Federal Rules of Civil Procedure, Rule 15(a)(2)…………………………..……14

Federal Rule of Civil Procedure, Rule 15(a)(1)(B)…………………………...2, 14

Federal Rule of Civil Procedure 12(b)(6)……………………………….…..2, 14

Federal Rule of Civil Procedure 8……………………………………….…..2

<u>Other Authorities</u>

Ninth Cir. Model Jury Instruction 9.7……………………………………..…...5

https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails...............................................................6

https://lasd.org/transparency/icd/.........................................................6

https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental...........................................6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

This civil rights and state tort action arises from the death of Ryan Willcox on January 11, 2024, following him hanging himself with a bedsheet in his cell at Twin Towers Correctional Facility ("TTCF") on January 7, 2024, while he was on suicide watch.  Plaintiffs, who are the parents of decedent Mr. Willcox, bring their claims individually and as successors in interest to Mr. Willcox.  The Los Angeles County Sheriff's Department ("LASD") and TTCF custodial staff were aware that Mr. Willcox was at risk of suicide, which was apparent by the fact that, at the time of the incident, Mr. Willcox was housed in Module 251, which houses inmates who are classified as SMR (Suicidal, Mental, Restraint), who are in administrative segregation due to suicidal thoughts and attempts. (Plaintiffs' Complaint "Compl." at ¶ 24).  According to the limited information available to Plaintiffs at this time, a deputy assigned to conduct Title 15 Safety Checks in Module 251 found Mr. Willcox sitting on the floor of his cell with a white piece of fabric wrapped around his neck and tied to the top portion of his bunk.  (*Id.* at ¶ 25).  Pursuant to Title 15 and basic police training, suicide watch protocols require frequent in-person monitoring of inmates at approximately 15-minute intervals by custodial staff.  (*Id.* at ¶ 29).  As alleged in Plaintiffs' Complaint, any competent custodial officer, including those named as individual defendants and "Doe" defendants in this lawsuit, would have provided heightened levels of supervision and monitoring to Mr. Willcox and would have removed any suicide hazards such as a bedsheet from Mr. Willcox's cell, such that his suicide would have been prevented.

Defendants County of Los Angeles, Sheriff Robert Luna, Assistant Sheriff Sergio Aloma, Sergeant Sanchez, and Deputy Gurrola have brought a motion to dismiss portions of Plaintiffs' Complaint ("Motion") (Dkt. 20).  Defendants Deputies Quiroz, Jimenez, Rios, Guerrero, and Sergeant Ohandjianian filed a notice of joinder in the Motion (Dkt. 25).  Plaintiffs hereby oppose the Motion and

respectfully request that if this Court is inclined to dismiss any of Plaintiffs' claims or any named defendants at this early stage of the case, then this Court do so without prejudice and with leave to amend.  The discovery period in this case has only just begun, and Plaintiffs have limited information about each individual defendant's specific involvement in the events leading up to Mr. Willcox's suicide.  The specific factual information regarding the events surrounding Mr. Willcox's hanging is in the custody, possession and control of the Defendants bringing the instant Motion.  Plaintiffs anticipate receiving additional information regarding this incident when the Parties exchange their initial disclosures pursuant to this Court's order setting the scheduling conference (Dkt. 21).  Additionally, after reviewing Defendants' Motion, and further reviewing the limited information they do have regarding this incident in preparing the instant opposition, Plaintiffs now anticipate filing a First Amended Complaint pursuant to Federal Rule of Civil Procedure, Rule 15(a)(1)(B), to name Deputy D. Burmak (EMP #676810) as an individual defendant in this case.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.  In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations,

"together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 662.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that dismissal for failure to state a claim should only be granted under narrow circumstances, and complaints should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any facts supporting her claim entitling her to relief. *Conley*, 355 U.S. at 45-46.

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in civil rights cases. *Id.*, *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that she has been

deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

Alternatively, where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

### III.    ARGUMENT

### A. Plaintiffs' 42 U.S.C. §1983 Claims (1-5) Against Aloma and Luna

Defendants first argue that Luna and Aloma should be dismissed from Plaintiffs' § 1983 claims (Claims 1-5).  Notably, Defendants do not appear to argue that the County of Los Angeles or the DOE SUPERVISORS should be dismissed from Plaintiffs' *Monell* claims (Claims 4-5) or that Plaintiffs' *Monell* claims should be dismissed entirely. (Motion at 3:15-6:23).  Plaintiffs' Complaint sufficiently alleges that Sheriff Robert Luna and Assistant Sheriff Aloma were the ultimate policymakers for TTCF and were responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California. (Complaint at ¶¶ 11-12).  This includes that Aloma and Luna were responsible for ensuring that policies were in place to ensure that inmates whom custodial staff know to be suicidal receive adequate mental health treatment and are placed in a continuously monitored cell that does not contain items the inmate could use to harm or kill himself.  Plaintiffs concede that Luna and Aloma were (to their knowledge) not physically present at TTCF at the time of Mr. Willcox's hanging.

The Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Hunter v. City of Sacramento*, 652 F.3d 1225, 1233-34, 1236 (9th Cir. 2011) (uninvestigated and unpunished); *McKay v. City of Hayward*, 949 F. Supp. 2d 971,

986 (N.D. Cal. 2013) ("'[T]he failure of an official to take any remedial steps after the violations' can indicate a deliberate choice and establish a basis for liability") (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (inaction); Ninth Cir. Model Jury Instruction 9.7 (same); *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016) (same). "It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see Waggy v. Spokane Cty.*, 594 F.3d 707, 713 (9th Cir. 2010) (noting that a policy can be one of action or inaction – through its omissions the municipality is responsible).

It is rare when a plaintiff has access to a precise policy or custom prior to engaging in discovery, and "requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *See Osuna v. Cty. Of Stanislaus*, 392 F. Supp. 3d. 1162, 1174 (E.D. Cal. 2019); *Estate of Sanchez v. City of Stanislaus*, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, at *5 (E.D. Cal. Apr. 18, 2019); *Creer v. Vallejo*, No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015). District courts have repeatedly noted that details of an alleged custom or policy need not be pled as the parties can develop such topics by engaging in discovery, and that only minimal factual allegations are required at the motion to dismiss stage. *See Creer*, 2015 WL 3795027, at *5; *Guevara v. City of Los Angeles*, No. CV 14-08120 DDP, 2015 WL 224727, at *3 (C.D. Cal. Jan. 15, 2015); *Galvan v. City of Vacaville,* No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896, at *5 (E.D. Cal. Sept. 5, 2018); *Halcomb v. City of Sacramento*, No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357, at *4 (E.D. Cal. June 22, 2016); *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *5 (N.D. Cal. Dec. 2, 2011); *Mitchell v. Twp. of Pemberton*, No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010).

In light of these standards, the following information supports Plaintiffs'
§1983 claims against Defendants COUNTY, LUNA, ALOMA, and DOES 9-10.

The County of Los Angeles, as well as the individuals named as defendants in
this lawsuit, particularly Sherrif Luna and Assistant Sheriff Aloma, have long since
been on notice of the risks of failing to provide adequate supervision, monitoring,
and suicide prevention to inmates at Los Angeles County jails.  Approximately
thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75)
inmates have died in Los Angeles County jails since the beginning of 2023.
https://www.vera.org/news/la-county-jail-deaths.  The manner of many of these
deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide
between January 2018 through December 2024.  (Compl. at ¶¶ 37, 94, 104);
https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-
year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/.  As clearly
alleged in paragraph 37 of Plaintiffs' Complaint, Defendants have long been on
notice of this history of in-custody deaths at Los Angeles County jails, including by
way of the 2015 federal civil rights action *United States of America v. County of Los
Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the
County of Los Angeles had an unconstitutional custom, practice, and policy of
maintaining inadequate suicide prevention practices (United States District Court,
Central District of California, Case No. 15-5903). *See*
https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-
county-implement-sweeping-reforms-mental. In 2015, on the same day that the
aforementioned lawsuit was filed, the United States Department of Justice "reached
a comprehensive settlement agreement with the county of Los Angeles and the Los
Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los
Angeles County Jails." *Id.*  The "settlement [purported to resolve] claims stemming
from the Justice Department's long-standing civil investigation into mental health

1    care at the jails, which found a pattern of constitutionally deficient mental health

2    care for prisoners, including inadequate suicide prevention practices." *Id*.

3        Despite this long history of disregard for inmate safety and protection,

4    Defendants Luna, Aloma, and DOES 9-10 failed to take actions to prevent the in-

5    custody death of Mr. Willcox and similarly situated inmates.

6    **B. Plaintiffs' Claims Under 42 U.S.C. §1983 Against the Deputy Defendants,**

7    **Sergeant Defendants, and Doe Defendants Are Sufficiently Pled**

8        Under the pleading standard articulated above, Plaintiffs have sufficiently

9    pled facts to demonstrate each individual defendants' violations of Mr. Willcox's

10   constitutional rights.  There is no heightened pleading standard in civil rights cases

11   like this one, such that Plaintiffs are permitted to allege facts based on "information

12   and belief."  As specifically alleged in Plaintiffs' Complaint, "[p]rior to [Mr.

13   Willcox] passing away on January 11, 2024, [he] was housed in Module 251, which

14   houses inmates who are classified as "SMR" (Suicidal, Mental, Restraint), who are

15   in administrative segregation due to suicidal thoughts and attempts."  (Compl. at ¶

16   24).  Based on Mr. Willcox's housing status, these Defendants knew that [Mr.

17   Willcox] was suicidal and on suicide watch, requiring special precautions.  (*Id*. at ¶¶

18   24, 40).  Plaintiffs have identified the DEPUTY DEFENDANTS as individual

19   deputies Quiroz, Guerrero, Jimenez, Rios, and Gurrola.  (*Id*. at ¶ 9).  These are the

20   deputies who were on duty at the time of Mr. Willcox's hanging and who were

21   presumably responsible for conducting Title 15 Safety Checks, monitoring Mr.

22   Willcox, and ensuring that he did not have access to objects with which he could

23   harm or kill himself.  Plaintiffs have identified the SERGEANT DEFENDANTS as

24   Sergeants Sanchez and Ohandjanian, who were also on duty at the time of this

25   incident and who were "responsible for ensuring that the actions, omissions,

26   policies, procedures, practices, and customs of the COUNTY and its employees and

27   agents complied with the laws of the United States and the State of California."  (*Id*.

28   at ¶¶ 10, 26).

Plaintiffs further specifically alleged that "[o]n January 7, 2024, at approximately 4:00 p.m., Defendant RIOS[1] observed [Mr. Willcox] sitting on the floor of his cell (#13) in Module 251 of the TTCF. At that time, [Mr. Willcox] had a bedsheet or portion of a bedsheet wrapped around his neck and tied to the top portion of his bunk bed. [Mr. Willcox] had attempted to commit suicide by hanging himself from the bunk bed using a bedsheet. [Mr. Willcox] was unresponsive. (Compl. at ¶ 25).  As asserted in Plaintiffs' §1983 claims against the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS (Claims 1-3), Mr. Willcox was reliant on these individual defendants to provide medical care to him in the form of suicide prevention, and prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984); (Compl. at ¶¶ 41, 62).  Plaintiffs have specifically set forth measures these individual defendants who were on duty at the time of this incident were responsible for taking, but failed to do so, including: (1) failing to place Mr. Willcox in a cell that was continuously monitored; (2) failing to continuously monitor Mr. Willcox to ensure that he did not injure or kill himself; (3) failing to place Mr. Willcox in a cell that does not contain objects he could use to injure or hang himself; (4) failing to comply with Title 15 suicide watch protocols; (5) failing to provide Mr. Willcox with proper screening for fitness for incarceration; (6) failing to address Mr. Willcox's suicidal state and summoning related medical and/or mental health care.  (*Id*. at ¶¶ 46, 62).  Plaintiffs further contend in their Complaint that the individual defendants' failures to comply with these suicide watch protocols directly resulted in Mr. Willcox's death. (*Id*. at ¶¶ 47, 57, 67, 69, 79).

---

[1] Plaintiffs now believe that Deputy Burmak was the deputy who found Mr. Willcox hanging in his cell, and Plaintiffs intend to file a First Amended Complaint clarifying this allegation and naming Deputy Burmak as a defendant.

The foregoing allegations comply with the liberal federal notice pleadings articulated above. *See, e.g.*, *Twombly*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 662. If this Court disagrees, then Plaintiffs respectfully request leave to amend.

**C. Defendants Are Not Immune on Plaintiffs' State Law Claims**

Defendants' Motion appears to argue only that Luna and Aloma are entitled to immunity on Plaintiffs' state law claims under California Government Code § 820.2, and Plaintiffs contend that the arguments raised do not apply to the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, or DOE CORRECTIONAL OFFICERS. Plaintiffs will nonetheless address this immunity provision as to all of the individual defendants, given that all Defendants have joined in the Motion.

California Government Code § 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." "The immunity does not apply to all acts by public employees within the literal meaning of the term 'discretionary.' Rather, the immunity is more limited." *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007) (citing *Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (1995)). "A 'workable definition' of immune discretionary acts draws the line between 'planning' and 'operational' functions of government. *Id*. (citing *Johnson v. State of California*, 69 Cal. 2d 782, 793-94 (1968). "Immunity is reserved for those '*basic policy decisions* [which have] ... been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" *Id*. (italics in original). "Further, a finding of [section 820.2] immunity 'requires a showing that the specific conduct giving rise to the suit involved an *actual* exercise of discretion, i.e., a conscious balancing of risks and advantages.'" *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1161 (9th Cir. 2019).

Additionally, Plaintiffs have asserted a negligence (wrongful death and survival) claim in this action against all Defendants, and "classification of the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969). Along these lines, pursuant to California Government Code § 844.6(d), a public employee or the government entity is *not* immune from liability for injury to any prisoner proximately caused by its employee's negligent conduct. (Compl. at ¶ 120). Further, California Government Code § 820(a) states that except as otherwise provided by statute, a public employee *is liable* by his act or omission to the same extent as a private person. (*Id.*)

Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. *Sanders v. Yuba County*, 247 Cal. App. 2d 748 (Ct. App. 1967). Here, Plaintiffs have alleged that all of the Defendants were acting within the scope of their employment at all relevant times. Plaintiffs have also alleged that Defendants knew that Mr. Willcox was in need of immediate medical attention in the form of suicide prevention based on his housing status. (Compl. at ¶ 119). As asserted in Plaintiffs' Complaint, the COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. (*Id.* at ¶¶ 107, 114, 120, 129).

For each of the foregoing reasons, none of the defendants are entitled to immunity under state law.

//

-10-

1

**D. Plaintiffs' Medical Malpractice Claim Should Not be Dismissed**

2    California law does not support Defendants' argument that *each Defendant*,

3    including each "Doe" Defendant, is entitled to immunity under California

4    Government Code § 845.6. (*See* Motion at 10:9-15).  Section 845.6 clearly states:

5    "Nothing in this section exonerates a public employee who is lawfully engaged in

6    the practice of one of the healing arts under any law of this state from liability for

7    injury proximately caused by malpractice or exonerates the public entity from its

8    obligation to pay any judgment, compromise, or settlement that it is required to pay

9    under subdivision (d) of Section 844.6." Section 844.6 states that "the public entity

10   shall pay . . . any judgment based on a claim against a public employee who is

11   lawfully engaged in the practice of one of the healing arts under any law of this state

12   for malpractice arising from an act or omission in the scope of his employment, and

13   shall pay any compromise or settlement of a claim or action, based on such

14   malpractice, to which the public entity has agreed."  The clear meaning of the above

15   statutes establish that Plaintiffs can sue based on a theory of medical malpractice,

16   and case law confirms this conclusion.  *See also Watson v. State of California*, 21

17   Cal. App. 4th 836, 842 (1993); *Flores v. Natividad Medical Center*, 192 Cal. App.

18   3d 1106, 1115 (1987).

19   Plaintiffs bring their claim for Professional Negligence—Medical Malpractice

20   against all Defendants, including the "Doe" Defendant Correctional Officers.

21   (Compl. at p. 24, line 17).  Plaintiffs' Complaint defines "Doe Correctional

22   Officers" to include nurses and other medical professionals employed by the

23   County, both directly and through a third-party contractor.  (Compl. at ¶ 14).  Even

24   if this Court is inclined to grant Defendants' Motion with respect to the named

25   Defendants who are not specifically "health care providers," this Court should not

26   dismiss this claim as to the "Doe" Defendants, whom Plaintiffs may seek leave to

27   identify in an amended pleading.

28

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Tortorella v. Castro*, 140 Cal. App. 4th 1, 3 n. 2 (2006). Here, Plaintiffs allege facts supporting each element of a medical malpractice claim, as follows: (1) "Doe Correctional Officers" include nurses and other medical professionals employed by the County, both directly and through a third-party contractor (Compl. at ¶ 14), and COUNTY medical providers, including DOE CORRECTIONAL OFFICERS had a duty to [Mr. Willcox] to provide approximate and established standard of medical care, and [Mr. Willcox] was a patient to which a duty is owed (Compl. at ¶ 112); (2) Defendants breached their duties when they negligently failed to exercise the proper degree of knowledge, skill, and competence in examining, diagnosing, treating, and caring for [Mr. Willcox], including their failure to conduct a proper medical assessment of [Mr. Willcox] (Compl. at ¶ 111), and this was below the standard of any medical professional, who had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise (Compl. at ¶ 112); (3-4) as a direct and proximate result of the aforementioned conduct, [Mr. Willcox] suffered injuries, including pain and suffering, and then died (Compl. at ¶ 113).

For the reasons above, Plaintiffs request that the Court also deny this portion of Defendants' Motion.

### E. Plaintiffs' State Law Claim for Failure to Summon Medical Care is Sufficiently Pled

Plaintiffs have adequately pled that Defendants failed to summon prompt and adequate medical attention for Mr. Willcox. Pursuant to California Government Code Section § 845.6, "a public employee, and the public entity where the employee

is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care." (Compl. at ¶ 117). Statutory immunities thus do not apply to this claim. Defendants argue that this claim fails because Plaintiffs indicated in their Complaint that approximately eleven (11) minutes elapsed between the deputy observing that Mr. Willcox had hung himself and the paramedics arriving at Mr. Willcox. This argument is unpersuasive for two reasons. First, as articulated in Plaintiffs' Complaint, Mr. Willcox's medical emergency and need for immediate medical and mental health care occurred not only after he hung himself but also during the entire time that he was housed in SMR due to his suicidal intentions. (Compl. at ¶¶ 118, 119). Mr. Willcox's need for immediate medical attention in the form of suicide prevention was obvious, given that he was housed in SMR. (*Id*.). As alleged in Plaintiffs' Complaint, the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS failed to provide Mr. Willcox with his needed medical and/or mental health care when they failed to follow suicide watch protocols. (*Id*.). Second, whether the eleven (11) minute delay in getting medical attention to Mr. Willcox was timely or adequate is a question of fact for the jury. Accordingly, Plaintiffs submit that this Court also should deny this portion of Defendants' Motion.

## F. Plaintiffs' Claim for Violation of the Bane Act Survives

The Ninth Circuit has stated that "reckless disregard" for a person's constitutional rights is evidence of a violation of the Bane Act. *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (holding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)). Plaintiffs have set forth sufficient facts in their Complaint to establish that the individual defendants acted with a reckless disregard for Mr. Willcox's

constitutional rights.  Defendants had specific knowledge of Mr. Willcox's suicidal ideation and intention to harm himself but failed to take action to protect him. (Compl. at ¶ 125).  Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  *See McDonnell*, *supra*, Case No. 15-5903.  When Defendants engaged in their misconduct and inactions—including failing to provide medical care and mental health treatment to Mr. Willcox, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that Mr. Willcox desired to harm or kill himself—Defendants acted with reckless disregard for Mr. Willcox's constitutional rights, including his constitutional right to timely and adequate medical attention in the form of suicide prevention and also after he hanged himself.  (Compl. at ¶ 127).  On these grounds, Plaintiffs submit that this claim is not subject to dismissal at this time.

### G. Plaintiffs Request Leave to Amend

As indicated above, Plaintiffs anticipate filing a First Amended Complaint pursuant to Federal Rules of Civil Procedure, Rule 15(a)(1)(B), to name Deputy D. Burmak as an individual defendant. Fed. R. Civ. P. 15(a)(1)(B) (providing that a party may amend its pleading once as a matter of course no later than 21 days after service of a motion under Rule 12(b)). In addition, should this Court be inclined to grant Defendants' Motion, then Plaintiffs respectfully request that they be permitted to amend their Complaint to cure any deficiencies identified by the Court.  Federal Rules of Civil Procedure, Rule 15(a)(2), provides that leave to amend  "shall be freely given when justice so requires." The Ninth Circuit has held that "[t]his policy is applied with 'extraordinary liberality.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)(quoting *Ownes v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *DeSoto*, 957 F.2d at 658. Indeed, "leave to amend the pleadings is freely given unless the opposing party makes a showing of

undue prejudice, or bad faith or dilatory motive on the part of the moving party." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martinez v. Newport Beach City*, 125 F3d 777, 785 (9th Cir. 1997).

## IV.    CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request an order denying Defendants' Motion to Dismiss. If the Court identifies any deficiencies in the pleading of claims, then Plaintiffs request that the claims be dismissed *without prejudice* and with leave to amend.

DATED:  January 31, 2025          LAW OFFICES OF DALE K. GALIPO

By   */s/ Renee Masongsong*
    Dale K. Galipo
    Renee V. Masongsong
    Attorneys for Plaintiffs

DATED:  January 31, 2025          LAW OFFICES OF DARRELL J. YORK

By   */s/ Darrell J. York*
    Darrell J. York
    Attorneys for Plaintiffs

## **CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,748  words, which complies with the word limit of L.R. 11-6.1.  This word count was calculated based on the word processing system.

DATED:  January 31, 2025          LAW OFFICES OF DALE K. GALIPO


By_____*/s/ Renee Masongsong*_____
                Dale K. Galipo
                Renee Masongsong
                Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE COMPLAINT