```
 1 │ JILL WILLIAMS-STATE BAR NO. 221793
   │ ALEXANDER S. RYNERSON-STATE BAR NO. 329956
 2 │ CARPENTER, ROTHANS & DUMONT LLP
   │ 500 S. Grand Avenue, 19th Floor
 3 │ Los Angeles, CA 90071
   │ (213) 228-0400 / (213) 228-0401 (Fax)
 4 │ JWilliams@CRDLaw.com; ARynerson@CRDLaw.com
 5 │ Attorneys for Defendants
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as successor in interest to Ryan WILLCOX, deceased,<br><br>    Plaintiffs.<br><br>    v.<br><br>COUNTY OF LOS ANGELES; SERGIO ALOMA; ROBERT LUNA; DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); SERGEANT SANCHEZ (#514312); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:24-cv-08790-SB-MAR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ALEXANDER S. RYNERSON IN SUPPORT THEREOF**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:    March 28, 2025<br>Time:    8:30 a.m.<br>Courtroom:  6C |

COME NOW, Defendants and submit this memorandum of points and authorities in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint.

-1-

REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ALLEGED PRIOR INCIDENTS THAT DID NOT RESULT IN CONSTITUTIONAL VIOLATIONS ARE INSUFFICIENT PREDICATES FOR *MONELL* CLAIMS AGAINST SHERIFF LUNA OR ASSISTANT SHERIFF ALOMA

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Plaintiffs essentially argue that by virtue of the fact that Sheriff Luna and Assistant Sheriff Aloma were serving as decisionmakers of a fashion within the hierarchy of the entire Sheriff's Department, they are liable for promulgating unconstitutional policies that led to Mr. Willcox's passing. Notably, Plaintiffs rely upon the premise that a "policy or practice" under Monell can be inferred from "widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Hunter v. City of Sacramento, 652 F.3d 1225, 1233-34 (9th Cir. 2011). However, a review of Plaintiffs' authority, compared against the facts of this case, make clear that no widespread practice of repeated constitutional violations attributable to Sheriff Luna of Assistant Sheriff Aloma is plausibly stated.

From the outset, it is important to recognize that the unfortunate passing of Mr. Willcox in alleged in a factual vacuum. While Plaintiffs are alleging that a widespread policy and/or custom permeates the Los Angeles County Sheriff's Department, they are also not providing the Court with any facts which might remove their allegations from the realm of conclusions and speculation. Simply put, Plaintiffs have provided no facts whatsoever which might put Mr. Willcox's suicide into context within the full perspective of the Department's operations.

Indeed, adopting Plaintiffs' proffered authority, <u>United States of America v. County of Los Angeles, et al.</u>, the Los Angeles County Sheriff's Department operates the Los Angeles County Jail system ("LA Jail System"), which is the largest such system *in the world*, attending to 15,500 to 19,500 inmate *per day*. Declaration of Alexander S. Rynerson ("Rynerson Decl."), ¶ 2, Ex. A – Stipulated Settlement, at 13:3. Applying Plaintiffs' own accounting of inmate suicides from 2018 to 2024 (29) makes the *lack* of constitutional violates even more clear, as comprising only .000065% of the average total inmate population from 2018 to 2024. Thus, even adopting Plaintiffs' proffered authority, it is clear that Plaintiffs have failed to put Mr. Willcox's suicide into context within the genuine scope of the Department's operations, which is necessary to plausibly allege a "widespread" custom or practice. Otherwise, Plaintiffs' allegations exist solely in the world of improper speculation and conclusion. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

Additionally, <u>United States of America v. County of Los Angeles, et al.</u>, is also completely inapplicable to Sheriff Luna or Assistant Sheriff Aloma. As Plaintiffs concede, a settlement was reached in this case in 2015, *seven years* before Sheriff Luna assumed office, and eight years before Aloma was appointed Assistant Sheriff. Critically, Plaintiffs completely fail to make any logical connection between the 2015 case and any actions of Sheriffs Luna or Aloma which led to an unconstitutional practice causing Mr. Willcox's death. See <u>Flores v. Cnty. of Los Angeles</u>, 758 F.3d 1154, 1159 (9th Cir. 2014) ["The isolated incidents of criminal wrongdoing by one deputy other than [defendant] do not suffice to put the County . . . on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.'"]; <u>Gant v. Cnty. of Los Angeles</u>, 772 F.3d 608, 618 (9th Cir. 2014) [reiterating that "a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."]

Finally, within the context of a failure to train claim under Monell, as Plaintiffs allege, the Supreme Court long ago explained in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) why a plaintiff must plead facts to establish that a municipality must be on notice that the training or policy is itself inadequate, while an incident taken in isolation is generally insufficient. Id. at 391–92. Plaintiffs have failed to plausibly allege how the County, the Sheriff's Department, Sheriff Luna, or Assistant Sheriff Aloma were on notice that there was a *present* unconstitutional policy or custom within the LA Jail System.

Ultimately, the numbers do not lie. The unfortunate passing of .000087% of the LA Jail System's inmate population does not, and cannot, plausibly establish a "widespread" unconstitutional policy or custom. The Court should therefore reject Plaintiffs' plainly conclusory and self-serving allegations which are plainly not representative of the genuine state of facts. In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore, Plaintiffs cannot tie any personal involvement or knowledge of Sheriffs Luna and Aloma to any constitutional violation, as required. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

## II. PLAINTIFFS' ALLEGATIONS OF INDIVIDUAL DEPUTY INVOLVEMENT ARE PLAINLY CONCLUSORY, SPECULATIVE, AND INCORRECT

It is well established that even under notice pleading, a plaintiff's complaint cannot survive a motion to dismiss when it fails to identify how each individual defendant was personally involved in a constitutional violation. Vance v. County of Santa Clara, (1996) 928 F.Supp. 993, 997 (N.D. Cal. 1996). Indeed, such personal involvement must allege "with at least some degree of particularity overt acts in which these Defendants engaged." Jones v. Comm. Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984).

Plaintiffs' allegations in this respect fall short. Even taking all of the allegations as true, the only individual Defendant whose personal involvement was

factually alleged in any way was Deputy Rios. Yet even in this instance, Plaintiffs have conceded that these allegations are *also incorrect*, as they now believe it was a Deputy Burmak who actually first observed Mr. Willcox hanging from his sheet.

Plaintiffs' plainly conclusory, speculative, and baseless allegations of the acts which *could* have been taken to stop Mr. Willcox's suicide, are presented with the benefit of 20/20 hindsight. To allow such conclusory claims to proceed, without more, would impermissibly unlock the doors to the discovery panoply and impose undue burden and prejudice upon each Defendant. Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011).

### III. PLAINTIFFS' BASIS FOR STATE LAW LIABILITY OF SHERIFF LUNA AND ASSISTANT SHERIFF ALOMA TURNS ON ACTS OF DISCRETION FOR WHICH THEY ARE IMMUNE

To be clear, Defendants are not arguing at this time that any of the Deputy or Sergeant Defendants are entitled to discretionary immunity. Nor are Defendants arguing that the County cannot be vicariously liable for the negligence of its employees. What Defendants are arguing is that Sheriff Luna and Assistant Sheriff Aloma cannot be vicariously liable for the actions of deputies and that they are entitled to discretionary immunity.

The Complaint alleges that Luna and Aloma breached their duty of care to Mr. Willcox via "neglect tactics," "failing to identify … health issues, failing to provide medical and mental health care," "failing to house [Mr. Willcox] in a suicide-watch compliant cell." Complaint, ¶ 103. Each of these alleged acts or omissions goes toward the personal involvement of the individuals present at the TTCF on the date Mr. Willcox was found in his cell – not alleged acts or omissions of Sheriff Luna or Assistant Sheriff Aloma. The Complaint does not allege any personal involvement by Sheriff Luna or Assistant Sheriff Aloma in any negligent or unconstitutional act such that the foregoing allegations are plainly inapplicable to them.

Rather, Plaintiffs' theory of liability in this regard turns upon Luna and

Aloma's discretionary acts; i.e., decisions regarding staffing, suicidal inmate policy, and training. Id., at 23:10-12. Such decisions are de facto discretionary acts for which Luna and Aloma are entitled to immunity. Barner v. Leeds, 24 Cal.4th 676, 685 (2000) [discretionary acts are limited to "basic policy decisions" made at the planning stage of operations, as opposed to routine duties]; Cal. Code of Regs., Tit. 15, § 1030 [establishing generalized mandate that correctional facilities must develop Suicide Prevention Programs, but not enumerating how the mandate must be accomplished].

Plaintiffs' Opposition offers no argument to the contrary, but instead misdirects attention to the liability of the Deputy and Sergeant Defendants, and the vicarious liability of the County, which are not at issue in this Motion. Plaintiffs are simply "muddying of the waters."

## IV. PLAINTIFFS CONCEDE THAT THE ONLY DEFENDANTS WHO COULD BE LIABLE FOR MEDICAL MALPRACTICE ARE THE DOE DEFENDANTS, NOT THE INDIVIDUAL DEFENDANTS

Plaintiffs have brought their medical malpractice claim against each Defendant, which includes the County, Sheriff Luna, Assistant Sheriff Aloma, each of the Deputy Defendants, the Sergeant Defendants, and the Doe Defendants. (Complaint, 24:17.) Yet Plaintiffs also concede that the only defendants who might qualify as "Health Care Providers" are the Doe Defendants. Naturally then, this claim cannot be brought against any of the other individual Defendants who are not "Health Care Providers."

Plaintiffs also tellingly fail to explain how anyone other than the Doe Defendants might be liable for medical malpractice. Indeed, the Opposition references numerous paragraphs of the Complaint, which only concern unnamed doe "Health Care Providers," *not* the County nor the individual Defendants. Opposition, 12:7-21. Though Plaintiffs lump each Defendant together in this regard, it is clear that only the Doe Defendants could possibly be liable for medical malpractice as the

only individuals who qualify as "Health Care Providers."

Plaintiffs' proffered authority is also unavailing. In <u>Watson v. State of Cal.</u>, 21 Cal.App.4th 836 (1993), the California Court of Appeal, affirming that a medical malpractice claim can only be brought against a "Health Care Provider," explicitly stated that "[s]ection 845.6 requires that the medical malpractice action be brought against the employees, *not the public entity*. It is clear that the State is not vicariously liable for the medical malpractice of its employees." <u>Id.</u>, at 842 [emphasis added, citations omitted]. Furthermore, in <u>Watson</u>, it was uncontested that the named defendant employees were in fact prison medical staff, who were "Health Care Providers." <u>Id.</u>, at 845. Indeed, the <u>Watson</u> court held that general "[p]rison authorities do not have the medical training [needed to diagnose or treat]. Where, as here, the prisoner is dissatisfied with the treatment provided, section 845.6 requires that he file a negligence action *against the medical provider*." <u>Id.</u>, at 843 [emphasis added]. "Although the State is required to pay the judgment assessed against its employees for medical malpractice … the State is immune from suit directly." <u>Flores v. Natividad Med. Center</u>, 192 Cal.App.3d 1106, 1115 (1987).

Thus, it is beyond dispute that the County, Sheriff Luna, Assistant Sheriff Aloma, the Deputy Defendants, and the Sergeant Defendants cannot be liable for medical malpractice as a matter of law. This claim should be dismissed as to each.

**V.     THE COMPLAINT DOES NOT ALLEGE FACTS TO SUPPORT A CLAIM THAT DEPUTIES FAILED TO PROMPTLY SUMMON MEDICAL ATTENTION AFTER MR. WILLCOX WAS FOUND**

In Opposition, Plaintiffs argue two points: (1) that Mr. Willcox's need for "immediate" medical attention was ongoing from the moment he was admitted in SMR; and (2) the alleged 11-minute period from the time Mr. Willcox was first observed until paramedics arrived was insufficiently "prompt". Neither point is availing.

First, precedent is clear that the duty to summon medical care only arises

when the need for medical care was both immediate and apparent. <u>Watson v. State of Cal.</u>, 21 Cal.App.4th 836 (1993). The fact that Mr. Willcox is alleged to have been on a 5150 hold does not mean that he was in immediate and apparent need for medical care at that time, and Plaintiffs have provided no allegations to establish that his pre-suicide need was immediate and apparent, or should have been apparent to a custody deputy. Nor does the duty to summon medical care extend to furnishing, monitoring, following up, or providing subsequent care for the same condition, which in this instance would be Mr. Willcox's mental condition and/or suicidal ideation. <u>Castaneda v. Dept. of Corrections & Rehab.</u>, 212 Cal.App.4th 1051, 1074 (2013). Thus, the duty to summon medical care did not arise until 4 p.m. on January 7, 2024, when Mr. Willcox was first discovered in his cell. Complaint, ¶ 25.

      Regarding the second argument, Plaintiffs argue in their opposition that there was an 11-minute "delay" in providing medical care to Mr. Willcox. That argument is not grounded in fact or the Complaint's allegations. In fact, the allegations in the Complaint foreclose Plaintiffs' argument. In the Complaint, Plaintiffs allege that Mr. Willox was found in his cell by Deputy Rios at 4 p.m. (Complaint, ¶ 25) and that, afterwards, Deputies Quiroz, Guerrero, Jiminez and Sgt. Sanchez responded to the cell and freed Mr. Willcox from the noose (<u>Id.</u> at ¶ 26). Plaintiffs allege that within 11 minutes of Mr. Willcox being found, Los Angeles County Fire Department personnel (who respond from outside the jail after being summoned to the jail) were on scene and providing emergency medical treatment to Mr. Willcox. <u>Id.</u>, at ¶ 27. The Complaint does not allege (nor can be amended to allege) that Deputy Rios or any of the other deputies who responded to the cell after Mr. Willcox was found did nothing during that 11-minute period of time or that they failed to immediately summon medical care for Mr. Willcox. Indeed, the fact that paramedics from the Los Angeles County Fire Department were at the jail and at Mr. Willcox's side within 11 minutes of Mr. Willcox being found establishes that medical care was immediately summoned.

## VI. PLAINTIFFS' BANE ACT ARGUMENT CONFUSES THE INTENT TO CAUSE A CONSTITUTIONAL DEPRIVATION WITH THE MEANS BY WHICH IT IS ACCOMPLISHED

Plaintiffs' Opposition is directed only toward whether a "reckless disregard" for a person's constitutional rights is evidence of specific intent to deprive that person of those rights. This is not at issue by way of this Motion.

It is beyond dispute that to properly allege a claim under the Bane Act, the plaintiff must show "(1) intentional interference or attempted interference with a … constitutional or legal right, and (2) the interference or attempted interference was by *threats, intimidation, or coercion*." Wiley v. Kern High School District, 107 Cal.App.5th 765, at 11 [emphasis added]. Plaintiffs' argument in Opposition only goes toward the first element, which is not the thrust of Defendant's argument. In this regard, Plaintiffs have completely failed to resolve this issue, and it is undisputed that there are no allegations by which the Court might infer that the alleged constitutional violations were accomplished by threats, intimidation, or coercion. Rather, all of Plaintiffs' arguments are that the defendants engaged in *inaction* as opposed to action.

The purpose of the Bane Act is to prevent hate crimes. Venegas v. County of Los Angeles, 153 Cal.App.4th 1230, 1242 (2007). Plaintiffs have alleged no basis for the Court to infer that a hate crime was committed upon Mr. Willcox.

## VII. CONCLUSION

In light of the foregoing, Defendants respectfully reiterate their request that the Court grant this Motion to Dismiss in its entirety.

DATED: February 7, 2025      CARPENTER, ROTHANS & DUMONT LLP

By:    /s/ *Alexander S. Rynerson*
         JILL WILLIAMS
         ALEXANDER S. RYNERSON
         Attorneys for Defendants

## DECLARATION OF ALEXANDER S. RYNERSON

1. I am an attorney at law duly licensed to practice before all courts in the State of California and the Central District of California, among others. If called upon as a witness I can and will testify to the following from my own personal knowledge.

2. On February 7, 2025, I personally accessed the history of filings on the matter of <u>United States of America v. County of Los Angeles, et al.</u>, Case No.: 15-5903 (C.D. Cal. 2015) to investigate the depth and nature of Plaintiffs' reliance upon this settled matter. Attached hereto is a true and correct copy of the parties' stipulated settlement and proposed order from said case, marked as Exhibit A.

I swear under the penalty of perjury that the foregoing is both true and correct. Executed this February 7, 2025, in Lake Arrowhead, California.

_____
Alexander S. Rynerson, Esq.

# ATTESTATION OF WORD COUNT

Pursuant to Federal Rule of Civil Procedure 27(d)(2)(C), I hereby attest that this Reply is 2,543 words long, excluding the caption, signatures, the supporting Declaration, and this attestation. To arrive at this determination, I relied upon the word-processing program utilized to draft this Reply.

DATED: February 7, 2025                    CARPENTER, ROTHANS & DUMONT LLP


                                    By:    /s/ *Alexander S. Rynerson*
                                           JILL WILLIAMS
                                           ALEXANDER S. RYNERSON
                                           Attorneys for Defendants