Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galiolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Darrell J. York (SBN 145601)
djylaw@gmail.com
**LAW OFFICE OF DARRELL J. YORK**
299 S. Main Street, 13th Floor
Salt Lake City, UT 84111
Tel: (661) 478-9640

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as successor in interest to Ryan WILLCOX, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES; DEPUTY D. BURMAK (#676810); DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT SANCHEZ (#514312); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-08790-SB-MAR<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Denial of Medical Care (42 U.S.C. § 1983)<br>2. Failure to Protect (42 U.S.C. § 1983)<br>3. Interference with Familial Relations (42 U.S.C. § 1983)<br>4. Supervisory Liability (42 U.S.C. §1983)<br>5. Municipal Liability – Failure to Train (42 U.S.C. § 1983)<br>6. Municipal Liability – Unconstitutional Custom, Policy, or Practice (42 U.S.C. § 1983)<br>7. Negligence (wrongful death and survival)<br>8. Negligence – Professional Medical Malpractice (wrongful death and survival)<br>9. Failure to Summon Medical Attention (Cal. Gov. § 845.6)<br>10. Bane Act (Cal. Civ. Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## FIRST AMENDED COMPLAINT FOR DAMAGES

COME NOW, RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as a successor in interest to Ryan Willcox, deceased, for their Complaint against Defendants, COUNTY OF LOS ANGELES (including its Los Angeles County Sheriff's Department and its Twin Towers Correctional Facility); DEPUTY D. BURMAK (#676810); DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT SANCHEZ (#514312); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, and hereby allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the County of Los Angeles, California.

3.      The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

## INTRODUCTION

4.      This civil rights and state tort action seek compensatory and punitive damages from the individual Defendants for violating various rights under the United States Constitution and California law in connection with the death of Plaintiffs' son, the deceased, Ryan Willcox, on or around January 11, 2024.

## **PARTIES**

5.      At all relevant times, Ryan Willcox ("DECEDENT") was an individual residing in the County of Los Angeles.

6.      RICHARD WILLCOX ("WILLCOX") is an individual residing in the County of Los Angeles, California, and was at all relevant times the natural father of DECEDENT.  WILLCOX sues in his individual capacity as the father of DECEDENT and also as DECEDENT's successor in interest.  WILLCOX seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

7.      KATHLEEN ROSAS ("ROSAS") is an individual residing in the County of Los Angeles, California, and was at all relevant times the natural mother of DECEDENT.  ROSAS sues in her individual capacity as the mother of DECEDENT and also as DECEDENT's successor in interest.  ROSAS seeks both survival and wrongful death damages under federal and state law, as well as punitive damages against the individual defendants.

8.      At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of political subdivision for the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, including the Los Angeles County Sheriff's Department ("LASD") and its agents and employees and the Twin Towers Correctional Facility ("TTCF") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.

9.      Defendants DEPUTY D. BURMAK (#676810); DEPUTY QUIROZ (#617296), DEPUTY GUERRERO (#656468), DEPUTY JIMENEZ (#659993), GURROLA (#629159), and DEPUTY RIOS (#661762) ("DEPUTY DEFENDANTS")

are deputies for the LASD who, at all relevant times, were working at the TTCF as correctional officers. DEPUTY DEFENDANTS were at all relevant times acting under color of law and within the course and scope of their duties as deputies/correctional officers for the LASD and the COUNTY. At all relevant times, DEPUTY DEFENDANTS were acting with complete authority and ratification of their principal, Defendant COUNTY.  At all relevant times, the DEPUTY DEFENDANTS were responsible for: ensuring that DECEDENT had appropriate medical and mental health attention, including in the form of suicide prevention; continuously supervising and monitoring DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; complying with suicide watch protocols and Title 15; ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself.

10.    Defendants SERGEANT SANCHEZ (#514312) and SERGEANT OHANDJANIAN (#466327) ("SERGEANT DEFENDANTS") are sergeants for the LASD who, at all relevant times, were working at the TTCF as supervisory correctional officers. SERGEANT DEFENDANTS were at all relevant times acting under color of law and within the course and scope of their duties as deputies for the LASD and the COUNTY. At all relevant times, SERGEANT DEFENDANTS were responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.  At all times relevant to this lawsuit, SERGEANT DEFENDANTS were responsible for: training the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer duties, including with respect to complying with Title 15 and suicide watch protocols and how to properly monitor inmates who are on suicide watch or known to be suicidal; supervising the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS, including with respect to their duties and responsibilities to monitor inmates who are on suicide watch or are known to be suicidal; ensuring that DEPUTY DEFENDANTS and DOE

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

CORRECTIONAL OFFICERS were not absconding their duties and were performing regular checks on DECEDENT.

11.    At all relevant times, COUNTY was the employer of all named Defendants.

12.    Defendants DOES 1-5 ("DOE CORRECTIONAL OFFICERS") are deputies/correctional officers for the COUNTY who were working at TTCF at the time of this incident.  At all relevant times, DOE CORRECTIONAL OFFICERS were responsible for: ensuring that DECEDENT had appropriate medical and mental health attention, including in the form of suicide prevention; continuously supervising and monitoring DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; complying with suicide watch protocols and Title 15; ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself. DOE CORRECTIONAL OFFICERS include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor. DOE CORRECTIONAL OFFICERS were at all relevant times acting under color of law within the course and scope of their employment with the COUNTY. DOE CORRECTIONAL OFFICERS were acting with complete authority and ratification of their principal, Defendant COUNTY at all relevant times.

13.    Defendants DOES 6-8 ("DOE HEALTHCARE PROVIDERS") are individuals employed by the COUNTY and/or TTCF as nurses, psychologists, psychiatrists, mental health professionals, and medical professionals. DOE HEALTHCARE PROVIDERS include such officials working on behalf of COUNTY and hired through, or employed directly by, a third-party contractor such as a third-party healthcare company. DOE HEALTHCARE PROVIDERS were responsible: for identifying medical and mental health issues in DECEDENT, including suicidal ideation or proclivity; providing medical and mental health attention to DECEDENT, including medical and mental health screening, suicide assessments, suicide prevention,

and counseling; creating mental health care plans and suicide prevention plans; advising DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on when an inmate needs to be on suicide watch or housed in a suicide compliant cell.  DOE HEALTHCARE PROVIDERS were at all relevant times acting under color of law within the course and scope of their employment with the TTCF. DOE CORRECTIONAL OFFICERS were acting with complete authority and ratification of their principal, Defendant COUNTY at all relevant times.

14.    Defendant DOE 9 ("TTCF DOE SUPERVISOR") is a supervisory deputy for the TTCF who at all relevant times was acting under color of law and within the course and scope of his/her employment with the TTCF. At all relevant times, TTCF DOE SUPERVISOR was acting with the complete authority and ratification of his/her principal, Defendant COUNTY. TTCF DOE SUPERVISOR includes those charged with coming up with the policies regarding medical care and medical screening, providing training on medical care and medical screening, and supervising nurses and medical professionals at TTCF.

15.    Defendant DOE 10 ("LASD DOE SUPERVISOR") is a managerial, supervisorial, and policymaking employee of the LASD. At the time of the incident, LASD DOE SUPERVISOR was acting under color of law, within the course and scope of his/her duties for the LASD, and within the scope of his/her employment with the COUNTY.  At all relevant times, LASD DOE SUPERVISOR was acting with the complete authority and ratification of his/her principal, Defendant, COUNTY.

16.    Defendants DOES 1-10 are sued in their individual capacities.

17.    On information and belief, Defendants DOES 1-10 were residents of the County of Los Angeles, California.

18.    In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10, were acting on the implied and actual permission and consent of Defendant COUNTY, and LASD and the TTCF.

19.    The true names and capacities of DOES 1-10 are unknown to Plaintiffs,

6

who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek to amend this Complaint to completely identify these Defendants when their true names and capacities have been ascertained.

20.    All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

21.    Plaintiffs filed timely claims under Government Code Section 911.2 et al., and bring pendant actions under state law. WILLCOX'S claim was rejected on April 17, 2024.  ROSAS' claim was rejected on August 7, 2024.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.    On or around January 11, 2024, DECEDENT passed away, giving rise to Plaintiffs' claims alleged herein.

23.    Prior to DECEDENT passing away on January 11, 2024, DECEDENT was housed in Module 251, which houses inmates who are classified as "SMR" (Suicidal, Mental, Restraint), who are in administrative segregation due to suicidal thoughts and attempts.  Based on DECEDENT being classified as "SMR," DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS knew or should have known that DECEDENT was suicidal.

24.    On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal through appropriate medical and mental health evaluations by DOE HEALTHCARE PROVIDERS and should have placed him on suicide watch.  On information and belief, DECEDENT presented as suicidal through his affect, demeanor, and statements he made regarding wanting to injure or kill

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  himself.

2      25.    On January 7, 2024, at approximately 4:00 p.m., Defendant DEPUTY

3  BURMAK (#676810) observed DECEDENT sitting on the floor of his cell (#13) in

4  Module 251 of the TTCF.  At that time, DECEDENT had a bedsheet or portion of a

5  bedsheet wrapped around his neck and tied to the top portion of his bunk bed.

6  DECEDENT had attempted to commit suicide by hanging himself from the bunk bed

7  using a bedsheet.  DECEDENT was unresponsive. On information and belief, DEPUTY

8  BURMAK and DEPUTIES RIOS, QUIROZ, GUERRERO, and JIMENEZ ("DEPUTY

9  DEFENDANTS") were responsible for monitoring DECEDENT on January 7, 2024,

10  and making sure that he did not attempt to injure or kill himself.  On information and

11  belief, DEPUTY DEFENDANTS did not continuously monitor DECEDENT or check

12  on him at intervals compliant with Title 15.  On information and belief, when DEPUTY

13  BURMAK found DECEDENT hung in his cell, no DEPUTY DEFENDANT, DOE

14  CORRECTIONAL OFFICER or other jail staff had conducted a check on DECEDENT

15  within the 15 minutes prior to DEPUTY BURMAK finding DECEDENT hung in his

16  cell.

17      26.    After BURMAK observed DECEDENT unresponsive in his cell on

18  January 7, 2024, Defendants DEPUTIES RIOS, QUIROZ, GUERRERO, JIMENEZ

19  and SERGEANT SANCHEZ responded to DECEDENT's cell.  QUIROZ lifted

20  DECEDENT off the ground and GUERRERO cut the sheet.  On information and belief,

21  when DEPUTY DEFENDANTS cut DECEDENT down from the sheet, they did so

22  callously and with no regard for his health, safety, and dignity.

23      27.    Los Angeles County Fire Department personnel responded at

24  approximately 4:13 p.m.  At approximately 4:27 p.m., Fire Department personnel stated

25  that they found a pulse on DECEDENT and then transported him to LAC + USC

26  Hospital.

27      28.    DECEDENT survived until January 11, 2024, and he endured pain and

28  suffering and medical expenses for approximately four days, between the time that he

8

was found unresponsive and the time that he passed away.

29.    Pursuant to Title 15 of the California Code of Regulations and pursuant to basic police training and TTCF training, suicide watch protocols further require frequent in-person monitoring of inmates at 15- or 20-minute intervals by jail staff.

30.    On January 7, 2024, each of the named DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were responsible for: ensuring that DECEDENT had appropriate medical and mental health attention and evaluations, including in the form of suicide prevention; continuously supervising and monitoring DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; complying with suicide watch protocols and Title 15; ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself. On information and belief, contrary to the suicide watch protocols, the cell where DECEDENT was housed on January 7, 2024, was not subject to full and continuous video monitoring of the entire cell by jail staff.

31.    On January 7, 2024, DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS were responsible for continuously monitoring DECEDENT, including through a live video feed. On information and belief, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS absconded their duties to continuously monitor the video feed, which allowed DECEDENT to hang himself.  On information and belief, on January 7, 2024, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS did not monitor DECEDENT every 15 to 20 minutes as required by Title 15 of the California Code of Regulations and did not otherwise perform the required welfare checks on DECEDENT.  On information and belief, the Defendants in charge of performing the Title 15 welfare checks on DECEDENT failed to perform these checks due to improper internet usage and absconding of their duties.

32.    On information and belief SERGEANT DEFENDANTS, DEPUTY DEFENDANTS, and DOE CORRECTIONAL OFFICERS failed to ensure that

DECEDENT's cell was compliant with suicide watch protocols.  Contrary to TTCF suicide watch protocols and basic correctional officer training, the cell into which DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS placed DECEDENT did not have a clear door or large window to allow appropriate monitoring and observation of the suicidal DECEDENT. Also contrary to basic suicide watch protocols, the cell where DECEDENT was housed contained a bunk bed, enabling objects to be tied to the top bunk and contained bedding, including at least one bedsheet.

33.    On information and belief, DOE HEALTHCARE PROVIDERS failed to provide DECEDENT with appropriate medical and mental health attention in the form of suicide prevention on January 7, 2024, and on the days leading up to January 7, 2024.  This includes that DOE HEALTHCARE PROVIDERS: failed to perform adequate mental health evaluations of DECEDENT; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to preventing DECEDENT's suicide, performing regular checks, and housing him in a suicide watch compliant cell.

34.    The failures by DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS to increase the frequency of monitoring of DECEDENT or move him to a suicide watch protocol–compliant cell was due in part to DEPUTY DEFENDANTS', SERGEANT DEFENDANTS', and DOE CORRECTIONAL OFFICERS's dismissals of DECEDENT's statements that he intended to commit suicide, and their knowing failure to communicate DECEDENT's suicidal ideation to other LASD and/or TTCF officials.

35.    The failure of the DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police

training, directly resulted in DECEDENT's death.  Had DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and/or DOE CORRECTIONAL OFFICERS done so, they would have found DECEDENT within enough time to provide life-saving medical attention.

36.    DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS and DOE CORRECTIONAL OFFICERS were negligent in their conduct, including but not limited to negligence in TTCF procedures for screening, intake and housing of those in need of mental and medical health care, those who verbalize suicidal threats or ideation, and those who otherwise present identifiable suicide risks.

37.    SERGEANT DEFENDANTS were responsible for training DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS with respect to suicide prevention, suicide watch protocols, and compliance with Title 15.  SERGEANT DEFENDANTS failed to provide proper and adequate training to DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS with respect to suicide prevention, suicide watch protocols, and compliance with Title 15.

38.    All Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  All Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  *See United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

39.    Each of the named and unnamed Defendants were integral participants in the denial of medical and mental health care, the failure to protect DECEDENT, the negligent treatment of DECEDENT, the deliberate indifference to DECEDENT's

obvious need for medical attention in the form of suicide prevention, and other violations of DECEDENT's rights.  Each of the named and unnamed Defendants also failed to intervene to prevent these violations, despite each Defendant having a responsibility and realistic opportunity to intervene to prevent these violations.

## FIRST CLAIM FOR RELIEF

### Denial of Medical Care (42 U.S.C. §1983)

### (All Plaintiffs Against DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS)

40.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

41.    At all relevant times, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS were acting under color of law.

42.    As alleged above, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS had actual knowledge of DECEDENT's suicidal ideations and related medical and/or mental health needs, based on DECEDENT's suicidal statements and the fact that he was classified as "SMR." DECEDENT's medical need (suicide prevention January 7, 2024, on and leading up to January 7, 2024) was serious, in that the failure to treat DECEDENT's suicidal ideations and desire to harm himself resulted in DECEDENT's death. His need was obvious, in that he stated that he was suicidal, presented a suicidal affect, and was classified as "SMR."  Defendants did not take the proper precautions to prevent DECEDENT from harming himself while he was incarcerated at TTCF.

43.    On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal, including by summoning medical care for

DECEDENT through appropriate medical and mental health evaluations by DOE
HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On
information and belief, DECEDENT presented as suicidal through his affect, demeanor,
and statements he made regarding wanting to injure or kill himself.

44.    DECEDENT was reliant on DEPUTY DEFENDANTS, SERGEANT
DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL
OFFICERS to provide him with medical attention in the form of suicide prevention.

45.    At all relevant times, including on January 7, 2024, the DEPUTY
DEFENDANTS and DOE CORRECTIONAL OFFICERS were responsible for:
ensuring that DECEDENT had appropriate medical and mental health attention,
including in the form of suicide prevention; continuously supervising and monitoring
DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT
did not injure or harm himself; complying with suicide watch protocols and Title 15;
ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not
contain objects with which he could harm himself. DEPUTY DEFENDANTS and DOE
CORRECTIONAL OFFICERS failed to fulfill these duties and responsibilities.
DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to
continuously monitor DECEDENT; failed to place him in a cell where he would be
continuously monitored; failed to remove items from DECEDENT's cell that he could
use to harm himself, including his bunk bed and bedsheet that he ultimately used to
hang himself; absconded their duties rather than watching DECEDENT; failed to
check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols,
Title 15, and basic police training; failed to ensure that DECEDENT received
appropriate medical attention in the form of suicide prevention; failed to ensure that
DECEDENT received appropriate mental health care; failed to summon a psychologist
or other mental health processional for DECEDENT; failed to ensure that timely life-
saving measures were provided to DECEDENT after he hung himself. These actions
and omissions on the part of DEPUTY DEFENDANTS and DOE CORRECTIONAL

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

OFFICERS were sufficiently harmful to evidence deliberate indifference to DECEDENT's serious medical needs, and the indifference to DECEDENT'S medical need as alleged above was substantial and obvious. These failures of the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS directly resulted in DECEDENT's death.

46.   At all relevant times, including on January 7, 2024, SERGEANT DEFENDANTS were responsible for: training DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer duties, including with respect to complying with Title 15 and suicide watch protocols and how to properly monitor inmates who are on suicide watch or known to be suicidal; supervising the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS, including with respect to their duties and responsibilities to monitor inmates who are on suicide watch or are known to be suicidal; ensuring that DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were not absconding their duties and were performing regular checks on DECEDENT; ensuring that DECEDENT was evaluated by a DOE HEALTHCARE PROVIDER to determine his fitness for incarceration, his housing classification, and whether he needed to be on suicide watch. SERGEANT DEFENDANTS failed to fulfill these responsibilities toward DECEDENT, including failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were: checking on DECEDENT in compliance with Title 15; getting DECEDENT the suicide prevention he needed, including from mental health professionals; making sure DECEDENT's cell was suicide compliant.

47.   Had the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS continuously monitored DECEDENT and/or checked on him in compliance with Title 15, and had the SERGEANT DEFENDANTS ensured that the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS complied with their responsibilities, then Defendants would have prevented DECEDENT from hanging himself and/or found DECEDENT hanging within enough time to provide life-saving

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

medical attention.

48. DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at substantial risk of suffering serious harm. Defendants did not take reasonable measures to abate this risk despite obvious consequences of not treating DECEDENT's suicidal ideations. By not treating DECEDENT's suicidal ideations, Defendants caused DECEDENT's injury and death.

49. On information and belief, DOE HEALTHCARE PROVIDERS failed to provide DECEDENT with appropriate medical and mental health attention in the form of suicide prevention on January 7, 2024, and during the days and weeks leading up to January 7, 2024, when DECEDENT was incarcerated at TTCF.  This includes that DOE HEALTHCARE PROVIDERS: failed to determine DECEDENT's fitness for incarceration; failed to perform adequate mental health evaluations of DECEDENT; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to preventing DECEDENT's suicide, performing regular checks, and housing him in a suicide watch compliant cell.

50. Despite Defendants having actual knowledge of DECEDENT's suicidal ideations at the time of and following DECEDENT's booking at TTCF, on information and belief, DECEDENT was not properly and adequately screened by a Registered Nurse or any other medical or mental health professional during intake to determine his fitness for incarceration. The mental health evaluation that DECEDENT did receive was cursory, inadequate, and did not comply with basic police training and TTCF protocols regarding handling situations where an inmate states that he is suicidal.

51. DECEDENT was entitled to receive necessary medical attention while in the care and custody of the COUNTY while detained/incarcerated at TTCF.  In doing

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the acts complained of, Defendants deprived DECEDENT of urgently needed medical care (in the form of suicide prevention on and leading up to January 7, 2024) in violation of his rights under the Eighth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

52.     Defendants knew that failure to provide timely medical treatment (in the form of suicide prevention) to DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious and obvious medical need, directly causing DECEDENT great bodily harm and death.

53.     DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS were deliberately indifferent to DECEDENT's serious medical and mental health needs when they failed to ensure that prompt and adequate medical attention in the form of suicide prevention was provided to DECEDENT at TTCF as described herein.

54.     As alleged above, Defendants also failed to provide sufficient and immediate medical attention to DECEDENT after he hanged himself.

55.     Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to or serious medical needs of DECEDENT. Defendants' conduct served no legitimate penological purpose.

56.     The denial of medical care to DECEDENT by Defendants (including medical care in the form of suicide prevention and life-saving medical attention after he hung himself) deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

57.     The denial of medical care was deliberately indifferent, malicious and

sadistic and caused harm to DECEDENT and served no penological purpose. The denial of medical care to DECEDENT offended evolving standards of decency and was an unnecessary and wanton infliction of pain.

58.    DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS are liable for the denial of medical care to DECEDENT, and for his injuries and death.  This is based on their direct conduct alleged above, based on their integral participation in the denial of medical care, and/or based on their failure to intervene to prevent these violations. Each of these defendants had a responsibility and realistic opportunity to intervene to prevent these violations.

59.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died and lost his earning capacity.

60.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

61.    The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

62.    Plaintiffs bring this claim as successors in interest to DECEDENT and seek survival damages under this claim. Plaintiffs seek damages, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

//

//

//

**SECOND CLAIM FOR RELIEF**

**Failure to Protect (42 U.S.C. §1983)**

**(All Plaintiffs Against DEPUTY DEFENDANTS, SERGEAN DEFENDANTS, and DOE CORRECTIONAL OFFICERS)**

63.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

64.     At all relevant times, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS were acting under color of law.

65.     Defendants' conduct as alleged above violated the Eighth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment to the United States Constitution.  Under *Farmer v. Brennan*, 511 U.S. 825, 832, (1994), "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." (internal citations omitted). Prison officials must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984).

66.     At all relevant times, including on January 7, 2024 and leading up to that date, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were responsible for protecting DECEDENT, including but not limited to by: ensuring that DECEDENT had appropriate medical and mental health attention, including in the form of suicide prevention; continuously supervising and monitoring DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; complying with suicide watch protocols and Title 15; ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself. DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and

bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training; failed to ensure that DECEDENT received appropriate medical attention in the form of suicide prevention; failed to ensure that DECEDENT received appropriate mental health care; failed to summon a psychologist or other mental health processional for DECEDENT.

67.    At all relevant times, including on January 7, 2024 and leading up to that date, SERGEANT DEFENDANTS were responsible for: training DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer duties, including with respect to complying with Title 15 and suicide watch protocols and how to properly monitor inmates who are on suicide watch or known to be suicidal; supervising the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS, including with respect to their duties and responsibilities to monitor inmates who are on suicide watch or are known to be suicidal; ensuring that DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were not absconding their duties and were performing regular checks on DECEDENT; ensuring that DECEDENT was evaluated by a DOE HEALTHCARE PROVIDER to determine his fitness for incarceration, his housing classification, and whether he needed to be on suicide watch.  SERGEANT DEFENDANTS failed to fulfill these responsibilities toward DECEDENT, including failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with Title 15.  These failures of SERGEANT DEFENDANTS directly resulted in DECEDENT's death.

68.    Defendants made intentional decisions regarding DECEDENT's confinement as alleged above. These conditions put DECEDENT at a substantial risk of suffering serious harm. Defendants did not take reasonable measures to protect DECEDENT from this risk despite obvious consequences of not acting upon DECEDENT's suicidal ideations, and by not taking action to protect DECEDENT from

his suicidal ideations, Defendants caused DECEDENT's injury and death.

69.     DECEDENT's risk of harm was serious, in that the failure to protect DECEDENT from his suicidal ideations and desire to harm himself resulted in DECEDENT's death.  Defendants were on notice that DECEDENT was suicidal (including because he was classified as "SMR") and on notice that suicidal inmates attempt to commit suicide using bedsheets.

70.     On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal, including by summoning medical care for DECEDENT through appropriate medical and mental health evaluations by DOE HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On information and belief, DECEDENT presented as suicidal through his affect, demeanor, and statements he made regarding wanting to injure or kill himself.

71.     DECEDENT was entitled to receive protection from the known risk of harm to his life while in the care and custody of the COUNTY while he was incarcerated at TTCF. In doing the acts complained of, Defendants failed to protect DECEDENT from a known risk of serious harm in violation of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

72.     Defendants knew that failure to protect DECEDENT could result in DECEDENT harming or killing himself, but disregarded that serious risk, directly causing DECEDENT great bodily harm and death.

73.     Each of the several aforementioned actions and omissions of Defendants along with other undiscovered conduct, shocks the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT. Defendants were deliberately indifferent to a substantial risk of serious harm to DECEDENT. Defendants' conduct served no legitimate penological purpose.

74.     DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

CORRECTIONAL OFFICERS are liable for the failure to protect DECEDENT, and for his injuries and death.  This is based on their direct conduct alleged above, based on their integral participation in the failure to protect, and/or based on their failure to intervene to prevent these violations. Each of these defendants had a responsibility and realistic opportunity to intervene to prevent these violations.

75.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pre-death pain and suffering, and then died and lost his earning capacity.

76.    Also as a direct and proximate cause of the acts of Defendants, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

77.    The conduct of DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, and SERGEANT DEFENDANTS was willful, wanton, malicious, and done with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages.

78.    Plaintiffs bring this claim as successors in interest to DECEDENT and seek survival damages under this claim. Plaintiffs seek damages, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life. Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C § 1988 on this claim.

## THIRD CLAIM FOR RELIEF

### Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)

### (All Plaintiffs Against DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, DOE CORRECTIONAL OFFICERS, and SERGEANT DEFENDANTS)

79.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

80.    At all relevant times, DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS were acting under color of law.

81.    Plaintiffs have a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with their son, DECEDENT.

82.    At all relevant times, including on January 7, 2024 and leading up to that date, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were responsible for: ensuring that DECEDENT had appropriate medical and mental health attention, including in the form of suicide prevention; continuously supervising and monitoring DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; complying with suicide watch protocols and Title 15; ensuring that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself. DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to fulfill these duties and responsibilities and thus failed to protect DECEDENT under this claim. Specifically, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training; failed to ensure that DECEDENT received appropriate medical attention in the form of suicide prevention; failed to ensure that DECEDENT received appropriate mental health care; failed to summon a psychologist or other mental health processional for DECEDENT; failed to ensure that timely life-

1    saving measures were provided to DECEDENT after he hung himself.

2    83.    At all relevant times, including on January 7, 2024 and leading up to that

3    date, SERGEANT DEFENDANTS were responsible for: training DEPUTY

4    DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer

5    duties, including with respect to complying with Title 15 and suicide watch protocols

6    and how to properly monitor inmates who are on suicide watch or known to be suicidal;

7    supervising the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS,

8    including with respect to their duties and responsibilities to monitor inmates who are on

9    suicide watch or are known to be suicidal; ensuring that DEPUTY DEFENDANTS and

10   DOE CORRECTIONAL OFFICERS were not absconding their duties and were

11   performing regular checks on DECEDENT; ensuring that DECEDENT was evaluated

12   by a DOE HEALTHCARE PROVIDER to determine his fitness for incarceration, his

13   housing classification, and whether he needed to be on suicide watch.  SERGEANT

14   DEFENDANTS failed to fulfill these responsibilities toward DECEDENT, including

15   failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE

16   CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with

17   Title 15.  These failures of SERGEANT DEFENDANTS directly resulted in

18   DECEDENT's death.

19   84.    On information and belief, DECEDENT was on suicide watch on January

20   7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT

21   was not on suicide watch at the time of this incident, then Defendants should have

22   determined that DECEDENT was suicidal, including by summoning medical care for

23   DECEDENT through appropriate medical and mental health evaluations by DOE

24   HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On

25   information and belief, DECEDENT presented as suicidal through his affect, demeanor,

26   and statements he made regarding wanting to injure or kill himself.

27   85.    On information and belief, DOE HEALTHCARE PROVIDERS failed to

28   provide DECEDENT with appropriate medical and mental health attention in the form

of suicide prevention on January 7, 2024, and on the days leading up to January 7, 2024. This includes that DOE HEALTHCARE PROVIDERS: failed to determine DECEDENT's fitness for incarceration; failed to perform adequate mental health evaluations of DECEDENT; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to preventing DECEDENT's suicide, performing regular checks, and housing him in a suicide watch compliant cell.

86.    These actions of Defendants, along with other undiscovered conduct, shock the conscience, in that Defendants acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs.

87.    DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS are liable for the violations of DECEDENT's constitutional rights, and for his injuries and death. This is based on their direct conduct alleged above, based on their integral participation in the failure to protect, and/or based on their failure to intervene to prevent these violations. Each of these defendants had a responsibility and realistic opportunity to intervene to prevent these violations.

88.    Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT, their son.

89.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, DOE CORRECTIONAL OFFICERS, and SERGEANT DEFENDANTS, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and

1  will continue to be so deprived for the remainder of their natural lives.

2      90.    The conduct of DEPUTY DEFENDANTS, DOE HEALTHCARE

3  PROVIDERS, DOE CORRECTIONAL OFFICERS, and SERGEANT DEFENDANTS

4  was willful, wanton, malicious, and done with a reckless disregard for the rights and

5  safety of DECEDENT, and for the rights of Plaintiffs, and therefore warrants the

6  imposition of exemplary and punitive damages as to these Defendants.

7      91.    Plaintiffs bring this claim in their individual capacities and seek wrongful

8  death damages under this claim, including for the loss of love, companionship, comfort,

9  support, society, care, and sustenance of DECEDENT, as well as compensatory

10  damages for their own emotional distress, mental anguish, and pain. Plaintiffs also seek

11  reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C

12  § 1988.

### **FOURTH CLAIM FOR RELIEF**

**Supervisor Liability**
**(42 U.S.C. §1983)**
**(All Plaintiffs against SERGEANT DEFENDANTS)**

92.    Plaintiffs repeat and re-allege each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

93.    At all relevant times, including on January 7, 2024, and leading up to that date, SERGEANT DEFENDANTS had a duty and responsibility to supervise their subordinates, including DOE CORRECTIONAL OFFICERS and DEPUTY DEFENDANTS.

94.    At all relevant times, including on January 7, 2024 and leading up to that date, SERGEANT DEFENDANTS were responsible for: training DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer duties, including with respect to complying with Title 15 and suicide watch protocols and how to properly monitor inmates who are on suicide watch or known to be suicidal; supervising the DEPUTY DEFENDANTS and DOE CORRECTIONAL

OFFICERS, including with respect to their duties and responsibilities to monitor inmates who are on suicide watch or are known to be suicidal; ensuring that DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were not absconding their duties and were performing regular checks on DECEDENT; ensuring that DECEDENT was evaluated by a DOE HEALTHCARE PROVIDER to determine his fitness for incarceration, his housing classification, and whether he needed to be on suicide watch.

95.     SERGEANT DEFENDANTS failed to fulfill these responsibilities toward DECEDENT, including: failing to properly train DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS, including with respect to suicide protocols and complying with Title 15; failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with Title 15; failing to ensure that DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were making sure that DECEDENT received the mental health care and medical attention in the form of suicide prevention that DECEDENT required; failing to supervise DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS to ensure that they were continuously monitoring DECEDENT; failing to check DECEDENT's cell to make sure that he did not have access to objects he could use to harm himself.  These failures of SERGEANT DEFENDANTS directly resulted in DECEDENT's death.

96.     The actions and inactions as described above by the SERGEANT DEFENDANTS were the moving force behind the constitutional violations of DECEDENT.  Accordingly, SERGEANT DEFENDANTS are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

97.     By reason of the aforementioned misconduct, DECEDENT was severely injured and subjected to pain and suffering and lost his life for which he, by Plaintiffs as his successors in interest, is entitled to recover survival damages.

98.     Plaintiffs bring this claim both individually and as successors-in-interest to
DECEDENT.  Plaintiffs seek survival damages, including for the nature and extent of
DECEDENT's injuries, pre-death pain and suffering, emotional distress, and loss of
life and enjoyment of life, as well as wrongful death damages, under this claim.
Plaintiffs also seek attorney's fees.

99.     The conduct of the SERGEANT DEFENDANTS was malicious, oppressive
and in reckless disregard for the rights and safety of DECEDENT and Plaintiffs and
warrants the imposition of exemplary and punitive damages as to the SERGEANT
DEFENDANTS.

100.   Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of
suit.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**(All Plaintiffs Against Defendants COUNTY and DOES 9-10)**

101.   Plaintiffs repeat and re-allege each and every allegation in the foregoing
paragraphs of this Complaint with the same force and effect as if fully set forth herein.

102.   The acts of DEPUTY DEFENDANTS, SERGEANT DEFENDANTS,
DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS
deprived DECEDENT and Plaintiffs of their particular rights under the United States
Constitution.

103.   At all relevant times, SERGEANT DEFENDANTS, DEPUTY
DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL
OFFICERS acted under color of law.

104.   On information and belief, Defendants COUNTY and DOES 9-10 failed
to properly and adequately train DEPUTY DEFENDANTS, DOE HEALTHCARE
PROVIDERS, and DOE CORRECTIONAL OFFICERS on subject matters including
but not limited to: the provision of medical/mental health attention to suicidal inmates
(in the form of suicide prevention), including determining when to procure

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

examinations or evaluations by DOE HEALTHCARE PROVIDERS and ensuring that inmates have appropriate mental health medication; determining when to place a person on suicide watch; determining when to place an inmate in a safety cell; ensuring that suicidal inmates are placed in suicide-watch-compliant cells; removing items an inmate could use to harm himself from the cell of a suicidal inmate; and the provision of protection to suicidal inmates.

105.    The training policies of Defendant COUNTY and DOES 9-10 were not adequate to train its deputies and correctional officers at LASD and the TTCF to handle the usual and recurring situations with which they must deal, including but not limited to medical/mental health screening during intake at TTCF, the provision of prompt and adequate medical/mental health care to suicidal inmates (in the form of suicide prevention), and the implementation of suicide watch protocols for inmates who pose a known risk of self-harm and/or suicidal proclivity.

106.    Defendants COUNTY and DOES 9-10 were deliberately indifferent to the obvious consequences of their failure to train their correctional officers and jail healthcare providers adequately.

107.    Defendants COUNTY and DOES 9-10 have long been on notice of this history of in-custody deaths at Los Angeles County jails, including by way of the 2015 federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the County of Los Angeles had an unconstitutional custom, practice, and policy of maintaining inadequate suicide prevention practices (United States District Court, Central District of California, Case No. 15-5903). https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental. In 2015, on the same day that the aforementioned lawsuit was filed, the United States Department of Justice "reached a comprehensive settlement agreement with the county of Los Angeles and the Los Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los Angeles County Jails." *Id.* The "settlement [purported to resolve] claims stemming

from the Justice Department's long-standing civil investigation into mental health care at the jails, which found a pattern of constitutionally deficient mental health care for prisoners, including inadequate suicide prevention practices." *Id.*  Despite this long history of disregard for inmate safety and protection, Defendants failed to take actions to prevent the in-custody death of DECEDENT and similarly situated inmates.

108.    Approximately thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75) inmates have died in Los Angeles County jails since the beginning of 2023. https://www.vera.org/news/la-county-jail-deaths.  The manner of many of these deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide between January 2018 through December 2024. *Id.*; https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/.

109.    Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

110.    The failure of Defendants COUNTY and DOES 9-10 to provide adequate training caused the deprivation of Plaintiffs' and DECEDENT's rights by DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS; that is, the failure of Defendants COUNTY and DOES 9-10 to train is so closely related to the deprivation of Plaintiffs' and DECEDENT's rights as to be the moving force that caused their ultimate injuries.

111.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

112.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C § 1988.

**SIXTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom, Policy, or Practice**

**(42 U.S.C. § 1983)**

**(All Plaintiffs Against Defendants COUNTY and DOES 9-10)**

113.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

114.   The acts of DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

115.   SERGEANT DEFENDANTS, DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS acted under color of law.

116.   SERGEANT DEFENDANTS, DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, and DOE CORRECTIONAL OFFICERS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY and DOES 9-10.  This includes unconstitutional policies of: not providing inmates with immediate screening by a DOE HEALTHCARE PROVIDER to evaluate the overall fitness of those in custody for incarceration; failing to provide and failing to summon ongoing medical and mental health attention to suicidal inmates in the form of suicide prevention; failing to follow suicide watch protocols; failing to prevent inmates from injuring and/or killing themselves, including by failing to conduct

Title 15 checks, failing to place suicidal inmates in a safety cell, and failing to monitor the live video feed showing the cells of suicidal inmates; allowing inmates known to be suicidal, including those classified as "SMR" to have a bedsheet in their cell; not monitoring the medication of suicidal inmates; not placing inmates known to be suicidal on suicide watch; and generally mishandling situations with individuals who suffer from mental health issues.

117. These actions by the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS illustrate these unconstitutional customs, practices, and policies: failed to continuously monitor DECEDENT, including through the video feed; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself or as a mechanism to commit suicide, including his bunk bed and bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training; failed to ensure that DECEDENT received appropriate medical attention in the form of suicide prevention; failed to ensure that DECEDENT received appropriate mental health care; failed to summon a psychologist or other mental health processional for DECEDENT; failed to ensure that timely life-saving measures were provided to DECEDENT after he hung himself. These failures of the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS directly resulted in DECEDENT's death.

118. These actions by the SERGEANT DEFENDANTS illustrate these unconstitutional customs, practices, and policies: failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were: checking on DECEDENT in compliance with Title 15; getting DECEDENT the suicide prevention he needed, including from mental health professionals; making sure DECEDENT's cell was suicide compliant.

119. These actions by the DOE HEALTHCARE PROVIDERS illustrate these

unconstitutional customs, practices, and policies: failing to determine DECEDENT's fitness for incarceration; failing to perform adequate mental health evaluations of DECEDENT; failing to prescribe DECEDENT mental health medication and/or discontinuing his mental health medication; failing to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to preventing DECEDENT's suicide, performing regular checks, and housing him in a suicide watch compliant cell.

120.   Defendants COUNTY and DOES 9-10 have long been on notice of this history of in-custody deaths at Los Angeles County jails, including by way of the 2015 federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the County of Los Angeles had an unconstitutional custom, practice, and policy of maintaining inadequate suicide prevention practices (United States District Court, Central District of California, Case No. 15-5903). https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental. In 2015, on the same day that the aforementioned lawsuit was filed, the United States Department of Justice "reached a comprehensive settlement agreement with the county of Los Angeles and the Los Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los Angeles County Jails." *Id*. The "settlement [purported to resolve] claims stemming from the Justice Department's long-standing civil investigation into mental health care at the jails, which found a pattern of constitutionally deficient mental health care for prisoners, including inadequate suicide prevention practices." *Id*. Despite this long history of disregard for inmate safety and protection, Defendants failed to take actions to prevent the in-custody death of DECEDENT and similarly situated inmates.

121.   Approximately thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75) inmates have died in Los Angeles County jails since the beginning of 2023. https://www.vera.org/news/la-county-jail-deaths. The manner of

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

many of these deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide between January 2018 through December 2024. *Id.*; https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/.

122.    On information and belief, DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

123.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

124.    Defendants COUNTY and DOES 9-10, together with various other officials, whether named or unarmed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Plaintiffs allege that Defendants COUNTY and DOES 9-10 maintained an unconstitutional custom, practice and policy of ratifying the above-articulated misconduct.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

125.    Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

126.    By reason of the aforementioned acts and omissions, Plaintiffs have

suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death. Accordingly, Defendants COUNTY and DOES 9-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

127.    Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacity and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, funeral and burial expenses, and attorney's fees under 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### Negligence – Wrongful Death and Survival

### (All Plaintiffs Against SERGEANT DEFENDANTS, DEPUTY DEFENDANTS, DOE CORRECTIONAL OFFICERS, and COUNTY)

128.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

129.    Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS were charged with a duty to use reasonable care to prevent harm or injury to others. This duty includes: providing prompt and adequate medical and mental health care to individuals in their custody (including in the form of suicide prevention); identifying and handling medical and mental health issues; screening inmates for physical fitness for incarceration; determining housing classification status for inmates; protecting inmates/detainees from reasonably foreseeable harm; and ensuring that all suicide watch protocols are followed.  Suicide watch protocols include ensuring that inmates on suicide watch do not have bunk beds and bedsheets in their cell and that inmates on suicide watch are continuously monitored, no less than every 15 to 20 minutes.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

130.   Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS breached their duty of care. The actions and inactions of Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS were negligent and reckless.

131.   On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal, including by summoning medical care for DECEDENT through appropriate medical and mental health evaluations by DOE HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On information and belief, DECEDENT presented as suicidal through his affect, demeanor, and statements he made regarding wanting to injure or kill himself.

132.   At all relevant times, including on January 7, 2024 and in the days leading up to that date, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS had a duty to DECEDENT to: ensure that DECEDENT had appropriate medical and mental health attention, including in the form of suicide prevention; continuously supervise and monitor DECEDENT while he was incarcerated at TTCF, including to ensure that DECEDENT did not injure or harm himself; comply with suicide watch protocols and Title 15; ensure that DECEDENT was housed in a suicide-watch compliant cell that did not contain objects with which he could harm himself. DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to fulfill these duties and responsibilities and were thus negligent.  Specifically, DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training.

133.   At all relevant times, including on January 7, 2024 and in the days leading up to this date, SERGEANT DEFENDANTS had a duty to DECEDENT to: train DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on their correctional officer duties, including with respect to complying with Title 15 and suicide watch protocols and how to properly monitor inmates who are on suicide watch or known to be suicidal; supervise the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS, including with respect to their duties and responsibilities to monitor inmates who are on suicide watch or are known to be suicidal; ensure that DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were not absconding their duties and were performing regular checks on DECEDENT; ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT.

134.   SERGEANT DEFENDANTS failed to fulfill these responsibilities toward DECEDENT, including failing to ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with Title 15.

135.   These Defendants negligently failed to take reasonable steps to prevent DECEDENT's death by suicide after DECEDENT advised them of his suicidal intentions and DECEDENT was placed on suicide watch and/or classified as "SMR."

136.   DECEDENT's injuries and death were foreseeable.  Defendants were aware of a long history of complete disregard to inmate safety and protection at COUNTY jails.  Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths.  See *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903.  On information and belief, since 2023, there have been approximately 60 in-custody deaths at COUNTY jails, many of them involving suicides.  Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves.

137.   DECEDENT's death was foreseeable and preventable. Approximately thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75) inmates have died in Los Angeles County jails since the beginning of 2023. https://www.vera.org/news/la-county-jail-deaths.  The manner of many of these deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide between January 2018 through December 2024.  *Id.*; https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/.  Defendants have long been on notice of this history of in-custody deaths at Los Angeles County jails, including by way of the 2015 federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the County of Los Angeles had an unconstitutional custom, practice, and policy of maintaining inadequate suicide prevention practices (United States District Court, Central District of California, Case No. 15-5903). https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental. In 2015, on the same day that the aforementioned lawsuit was filed, the United States Department of Justice "reached a comprehensive settlement agreement with the county of Los Angeles and the Los Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los Angeles County Jails." *Id*.  The "settlement [purported to resolve] claims stemming from the Justice Department's long-standing civil investigation into mental health care at the jails, which found a pattern of constitutionally deficient mental health care for prisoners, including inadequate suicide prevention practices." *Id*.  Based on this publicly-available information, Defendants were on notice that DECEDENT was at risk of hanging himself, and were on notice that suicidal inmates may hang themselves with bedsheets.

138.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe

pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

139.   THE COUNTY is vicariously liable for the wrongful acts of DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

140.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support.

### EIGHTH CLAIM FOR RELIEF

**Professional Negligence – Medical Malpractice**

**California Government Code 845.6 (wrongful death and survival**

**(All Plaintiffs Against DOE HEALTHCARE PROVIDERS and COUNTY)**

141.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

142.   DOE HEALTHCARE PROVIDERS had a duty to DECEDENT to provide him with proper medical and mental health attention (including in the form of suicide prevention). DOE HEALTHCARE PROVIDERS negligently failed to exercise the proper degree of knowledge, skill, and competence in examining, diagnosing, treating, and caring for DECEDENT.

The conduct of DOE HEALTHCARE PROVIDERS was below the standard of any medical professional, who had a duty to use such skill, prudence, and diligence as other

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

members of the profession commonly possess and exercise. DOE HEALTHCARE PROVIDERS had a duty to DECEDENT to provide approximate and established standard of medical care. DECEDENT was a patient to which a duty is owed.

143.   On information and belief, DOE HEALTHCARE PROVIDERS failed to provide DECEDENT with appropriate medical and mental health attention when he was incarcerated at TTCF, leading to his suicide attempt on January 7, 2024.  This includes that DOE HEALTHCARE PROVIDERS had a duty to do the following, but failed to fulfill these duties, as follows: failed to determine DECEDENT's fitness for incarceration; failed to perform adequate mental health evaluations of DECEDENT to determine whether he was suicidal; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to preventing DECEDENT's suicide, performing regular checks, and housing him in a suicide watch compliant cell.

144.   The DOE HEALTHCARE PROVIDERS who performed the cursory and inadequate mental health evaluations were aware of DECEDENT's medical and mental health emergency in the form of suicidality, in that DECEDENT repeatedly made them aware of his suicidal ideations and intentions to kill himself. Accordingly, proper examination, diagnosis, treatment, and care for DECEDENT was essential to the preservation of DECEDENT's life.

145.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of DOE HEALTHCARE PROVIDERS, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

146.   The COUNTY is vicariously liable for the wrongful acts of DOE HEALTHCARE PROVIDERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

147.   Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support.

## NINTH CLAIM FOR RELIEF

**Failure to Summon Medical Care (Cal. Gov. Code § 845.6) (wrongful death and survival)**

**(All Plaintiffs Against All Defendants)**

148.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

149.   Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care.  In this case, "medical care" includes ongoing suicide prevention to DECEDENT, both on January 7, 2024, and during the days and weeks leading up to that date.  Suicide prevention includes ensuring that DECEDENT received: mental health attention, suicide evaluations, a safe cell that did not include items he could use to harm himself, and continuous monitoring in compliance with TTCF suicide protocols and Title 15.

150.   Defendants were aware of DECEDENT's medical emergency (his ongoing proclivity for suicide and/or risk of attempting to injure or kill himself), in that

DECEDENT was ultimately placed on suicide watch and/or classified as "SMR." In other words, as alleged above, DECEDENT's medical emergency (suicidality/suicidal ideation) was obvious and substantial. Defendants are not entitled to immunity under state law where the inmate is in obvious need of medical care.  In this case "obvious need of medical care" includes his need for mental health attention, mental health screenings, counseling, evaluations by psychologists, and suicide evaluations.

151.   On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal, including by summoning medical care for DECEDENT through appropriate medical and mental health evaluations by DOE HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On information and belief, DECEDENT presented as suicidal through his affect, demeanor, and statements he made regarding wanting to injure or kill himself.

152.   DOE HELATHCARE PROVIDERS were responsible for providing the medical and mental healthcare and for communicating with DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and DEPUTY DEFENDANTS regarding a treatment plan for DECEDENT.  On information and belief, DOE HEALTHCARE PROVIDERS failed to provide DECEDENT with appropriate medical and mental health attention in the form of suicide prevention during DECEDENT's incarceration. This includes that DOE HEALTHCARE PROVIDERS: failed to determine DECEDENT's fitness for incarceration; failed to perform adequate mental health evaluations of DECEDENT; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to provide necessary recommendations and/or updates to DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS regarding DECEDENT's mental health, suicide risk, and a treatment plan.

153.   DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and

DEPUTY DEFENDANTS were responsible for: ensuring that DOE HEALTHCARE PROVIDERS were summoned for DECEDENT and/or made available to DECEDENT throughout his incarceration to evaluate his suicide risk; ensuring that DECEDENT was in a suicide compliant cell; monitoring DECEDENT; as to the SERGEANT DEFENDANTS, ensuring that DOE CORRECTIONAL OFFICERS and DOE DEFENDANTS were monitoring DECEDENT. DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and DEPUTY DEFENDANTS failed to fulfill these responsibilities.  Despite Defendants' actual knowledge that DECEDENT was in need of immediate medical and mental care in the form of suicide prevention as alleged above, DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and DEPUTY DEFENDANTS absconded their duties instead of providing medical attention in the form of suicide prevention to DECEDENT. DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and DEPUTY DEFENDANTS  failed to place DECEDENT in a suicide watch compliant cell when he was known to be suicidal and have a propensity for self-harm, including placing him in a cell with bedsheet(s) and a bunk bed, which DECEDENT foreseeably used to hang himself; failed to adequately monitor and supervise DECEDENT at the required 15 to 20 minute intervals; failed recognize and identify indications of suicidal tendencies; failed to get mental health treatment for DECEDENT to prevent his suicide.

154.   Separately, on this claim, Plaintiffs allege that DOE CORRECTIONAL OFFICERS, SERGEANT DEFENDANTS, and DEPUTY DEFENDANTS failed to summon immediate emergency medical assistance for DECEDENT on January 7, 2024 after he was found unresponsive.

155.   The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) further states that except as otherwise

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person. Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment. Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care.

156.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

157.    Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of their DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, and funeral and burial expenses.

## TENTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code § 52.1)

### (All Plaintiffs Against All Defendants)

158.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

159.    California Civil Code Section 52.1 ("the Bane Act"), prohibits any person

from intentionally interfering with another person's constitutional rights. An intent to violate a person's constitutional rights can be shown by a reckless disregard for that person's constitutional rights.

160.  Here, Defendants DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, HEALTHCARE PROVIDER DOES, and DOE CORRECTIONAL OFFICERS acted with reckless disregard for DECEDENT's constitutional rights as set forth above. In particular, Defendants had specific knowledge of DECEDENT's suicidal ideation and intention to harm himself but failed to take action to protect him, demonstrating reckless disregard for DECEDENT's substantive due process rights.

161.  On information and belief, DECEDENT was on suicide watch on January 7, 2024, as indicated by his "SMR" classification.  In the alternative, if DECEDENT was not on suicide watch at the time of this incident, then Defendants should have determined that DECEDENT was suicidal, including by summoning medical care for DECEDENT through appropriate medical and mental health evaluations by DOE HEALTHCARE PROVIDERS, and should have placed him on suicide watch.  On information and belief, DECEDENT presented as suicidal through his affect, demeanor, and statements he made regarding wanting to injure or kill himself.

162.  Defendants were on notice of DECEDENT's risk of suicide and the risks specifically of allowing a suicidal inmate to have a bedsheet in his cell. Approximately thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75) inmates have died in Los Angeles County jails since the beginning of 2023. https://www.vera.org/news/la-county-jail-deaths.  The manner of many of these deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide between January 2018 through December 2024.  *Id.*; https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/.  Defendants have long been on notice of this history of in-custody deaths at Los Angeles County jails, including by way of the 2015 federal civil rights action *United States of America v.*

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

*County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the County of Los Angeles had an unconstitutional custom, practice, and policy of maintaining inadequate suicide prevention practices (United States District Court, Central District of California, Case No. 15-5903).

https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental. In 2015, on the same day that the aforementioned lawsuit was filed, the United States Department of Justice "reached a comprehensive settlement agreement with the county of Los Angeles and the Los Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los Angeles County Jails." *Id.* The "settlement [purported to resolve] claims stemming from the Justice Department's long-standing civil investigation into mental health care at the jails, which found a pattern of constitutionally deficient mental health care for prisoners, including inadequate suicide prevention practices." *Id.* Based on this publicly-available information, Defendants were on notice that DECEDENT was at risk of hanging himself, and were on notice that suicidal inmates may hang themselves with bedsheets.

163. DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training; failed to ensure that DECEDENT received appropriate medical attention in the form of suicide prevention; failed to ensure that DECEDENT received appropriate mental health care; failed to summon a psychologist or other mental health processional for DECEDENT; failed to ensure that timely life-saving measures were provided to DECEDENT after he hung himself. These actions and omissions on the part of DEPUTY DEFENDANTS and DOE CORRECTIONAL

OFFICERS demonstrate a reckless disregard for DECEDENT's constitutional rights.

164.    SERGEANT DEFENDANTS failed to: train the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on Title 15 and suicide protocols; ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with Title 15, getting DECEDENT the suicide prevention he needed, including from mental health professionals, and making sure DECEDENT's cell was suicide compliant. These actions and omissions on the part of SERGEANT DEFENDANTS demonstrate a reckless disregard for DECEDENT's constitutional rights.

165.    DOE HEALTHCARE PROVIDERS: failed to determine DECEDENT's fitness for incarceration, failed to perform adequate mental health evaluations of DECEDENT; failed to prescribe DECEDENT mental health medication and/or discontinued his mental health medication; failed to communicate with DEPUTY DEFENDANTS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS with respect to a treatment plan for DECEDENT. These actions and omissions on the part of DOE HEALTHCARE PROVIDERS demonstrate a reckless disregard for DECEDENT's constitutional rights.

166.    When Defendants engaged in their misconduct and inactions as alleged above—including failing to protect DECEDENT, who was exhibiting suicidal ideations and a propensity for self-harm, even when Defendants had direct information that DECEDENT desired to harm or kill himself—Defendants acted with reckless disregard for DECEDENT'S constitutional rights, including his constitutional right to timely and adequate medical attention in the form of suicide prevention and also after he hanged himself.

167.    The conduct of Defendants as alleged above was a substantial factor in causing Plaintiffs' and DECEDENT's harms, losses, injuries, and damages.

168.    The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to section 815.2(a) of the California Government Code, which

provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

169.    The conduct of Defendants DEPUTY DEFENDANTS, DOE HEALTHCARE PROVIDERS, SERGEANT DEFENDANTS, and DOE CORRECTIONAL OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the individual Defendants.

170.    As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries, including pain and suffering, and then died, losing his earning capacity. Also, as a direct and proximate cause of the acts of Defendants as alleged above, Plaintiffs have suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

171.    Plaintiffs bring this claim as successors in interest to DECEDENT and in their individual capacities and seek survival and wrongful death damages under this claim, including for DECEDENT's pain and suffering, loss of earning capacity, and loss of enjoyment of life, as well as for Plaintiffs' loss of DECEDENT's love, companionship, guidance, advice, and support. Plaintiffs also seek reasonable costs, and funeral and burial expenses on this claim. Under the provisions of Cal. Civ. Code § 52, Defendants are also liable for reasonable attorney's fees and a civil penalty of $25,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants County of Los Angeles; Deputy D. Burmak (#676810); Deputy Quiroz (#617296); Deputy Guerrero (#656468); Deputy Jimenez (#659993); Sergeant Sanchez (#514312); Deputy Gurrola (#629159); Deputy Rios (#661762); Sergeant Ohandjanian (#466327), and DOES 1-10, as follows:

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

(a) For compensatory damages and whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

(b) For funeral and burial expenses, and loss of financial support;

(c) For pre-death pain and suffering, and loss of enjoyment of life according to proof at trial;

(d) For punitive damages against the individual Defendants in an amount to be proven at trial;

(e) For statutory damages;

(f) For interest;

(g) For reasonable attorney's fees, including litigation expenses;

(h) For costs of suit; and

(i) For such further other relief as the Court may deem just, proper, and appropriate.

Dated: February 10, 2025

LAW OFFICES OF DALE K. GALIPO
LAW OFFICE OF DARRELL J. YORK

*/s/ Dale K. Galipo*

Dale K.  Galipo
Renee V. Masongsong
Darrell J. York
Attorneys for Plaintiffs

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully submitted,

Dated: February 10, 2025                LAW OFFICES OF DALE K. GALIPO
                                        LAW OFFICE OF DARRELL J. YORK

                                                */s/ Dale K. Galipo*

                                        Dale K.  Galipo
                                        Renee V. Masongsong
                                        Darrell J. York
                                        Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL