Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galiolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Darrell J. York (SBN 145601)
djylaw@gmail.com
**LAW OFFICE OF DARRELL J. YORK**
299 S. Main Street, 13th Floor
Salt Lake City, UT 84111
Tel: (661) 478-9640

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RICHARD WILLCOX and
KATHLEEN ROSAS, in each case
individually and as successor in interest
to Ryan Willcox, deceased,

               Plaintiffs,

      v.

COUNTY OF LOS ANGELES;
DEPUTY D. BURMAK; DEPUTY
QUIROZ (#617296); DEPUTY
GUERRERO (#656468); DEPUTY
JIMENEZ (#659993); SERGEANT
SANCHEZ (#514312); DEPUTY
GURROLA (#629159); DEPUTY
RIOS (#661762); SERGEANT
OHANDJANIAN (#466327); and
DOES 1-10, inclusive,

               Defendants.

Case No. 2:24-cv-08790-SRM-MAR

*Assigned to*:
Hon. District Judge Serena R. Murillo
Hon. Mag. Judge Margo A. Rocconi

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS PORTIONS OF
PLAINTIFFS' FIRST AMENDED
COMPLAINT FOR DAMAGES**

Date:   March 28, 2025
Time:  8:30 a.m.
Crtrm: 9B

# **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.     INTRODUCTION...................................................................................1

II.    LEGAL STANDARD ............................................................................2

III.   ARGUMENT .........................................................................................4

      A.    Plaintiffs' Claims Under 42 U.S.C. § 1983 Adequately Allege Each Defendant's Personal Involvement................................4

      B.    Plaintiffs' Claims for Supervisory Liability under 42 U.S.C. § 1983 Allege Specific Facts and Assert that the Sergeant Defendants' Acts or Omissions Caused Mr. Willcox's Death ..............9

      C.    Defendants Are Not Immune on Plaintiffs' State Law Claims ............11

      D.    Plaintiffs' Claim for Violation of the Bane Act Survives.....................13

      E.    Plaintiffs Request Leave to Amend .......................................14

IV.   CONCLUSION ....................................................................................15

CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1).........16

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>Cases</u>

3

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ...............................................................................2, 9

4

*Bell Atlantic Corp. v. Twombly*,
     550 U.S. 544 (2007) ...............................................................................2, 9

5

6

*Brown v. Lynch*,
     831 F.3d 1146 (9th Cir. 2016)....................................................................7

7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*,
     637 F.3d 1047 (9th Cir. 2011).....................................................................2

8

9

*Capogrosso v. Sup. Ct.*,
     588 F.3d 180 (3rd Cir. 2009)......................................................................2

10

*Conley v. Gibson*,
     355 U.S. 41 (1957) .....................................................................................3

11

12

*Creer v. Vallejo*,
     No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027 (E.D. Cal. June 17, 2015) .7

13

*Davis v. Passman*,
     442 U.S. 228 (1979) ...................................................................................2

14

*DeSoto v. Yellow Freight Sys., Inc.*,
     957 F.2d 655 (9th Cir. 1992)..................................................................3, 14

15

16

*Eminence Capital, LLC v. Aspeon, Inc.*,
     316 F.3d 1048 (9th Cir. 2003)...................................................................14

17

*Erickson v. Pardus*,
     551 U.S. 89 (2007) .....................................................................................3

18

19

*Estate of Sanchez v. City of Stanislaus*,
     No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019)
     ....................................................................................................................7

20

21

*Foman v. Davis*,
     371 U.S. 178 (1962) .................................................................................14

22

*Galvan v. City of Vacaville*,
     No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896 (E.D. Cal. Sept. 5, 2018)....7

23

*Gomez v. Vernon*,
     255 F.3d 1118 (9th Cir. 2001).....................................................................6

24

25

*Guevara v. City of Los Angeles*,
     No. CV 14-08120 DDP, 2015 WL 224727, (C.D. Cal. Jan. 15, 2015) ...........7

26

*Haines v. Brand*,
     No. C-11-1335 EMC, 2011 WL 6014459 (N.D. Cal. Dec. 2, 2011)...............7

27

28

-ii-

*Halcomb v. City of Sacramento*,
   No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357 (E.D. Cal. June 22, 2016) 7

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ......................................................................... 5

*Hunter v. City of Sacramento*,
   652 F.3d 1225 (9th Cir. 2011) ........................................................ 6

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ........................................................ 2

*Leatherman v. Tarrant Cnty.*,
   507 U.S. 163 (1993) ......................................................................... 3

*Lolli v. Cnty. of Orange*,
   351 F.3d 410 (9th Cir. 2003) ......................................................... 10

*Martinez v. Newport Beach City*,
   125 F3d 777 (9th Cir. 1997) .......................................................... 14

*McCorkle v. City of Los Angeles*,
   70 Cal. 2d 252 (1969) .................................................................... 11

*McKay v. City of Hayward*,
   949 F. Supp. 2d 971 (N.D. Cal. 2013) ........................................... 6

*Mitchell v. Twp. of Pemberton*,
   No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466 (D.N.J. June 17, 2010) .. 7

*N. Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983) .......................................................... 3

*Osuna v. City of Stanislaus*,
   392 F. Supp. 3d. 1162 (E.D. Cal. 2019) ......................................... 7

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir. 1992) ........................................................ 7

*Ownes v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ........................................................ 14

*Paratt v. Taylor*,
   451 U.S. 527 (1981) ......................................................................... 3

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ......................................................................... 7

*Reese v. Cnty. of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018) ...................................................... 13

*Sanders v. Yuba Cnty.*,
   247 Cal. App. 2d 748 (Ct. App. 1967) .......................................... 12

*Silvas v. E*Trade Mortg. Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ........................................................ 3

*Starr v. Baca*,
        652 F.3d 1202 (9th Cir. 2011) ........................................................................ 10

*Swierkiewicz v. Sorema N.A.*,
        534 U.S. 506 (2002) ........................................................................................ 3

*United States of America v. County of Los Angeles and Los Angeles County Sheriff
        Jim McDonnell*,
        United States District Court, Central District of California, Case No. 15-5903
        .......................................................................................................... 9, 13

*United States v. Reese*,
        2 F.3d 870 (9th Cir. 1993) ............................................................................ 13

*Waggy v. Spokane Cty.*,
        594 F.3d 707 (9th Cir. 2010) .......................................................................... 7

### Statutes

California Government Code § 820 ........................................................................ 11

California Government Code § 844.6 ...................................................................... 11

### Other Authorities

Ninth Circuit Model Jury Instruction 9.7 .............................................................. 7

### Rules

Federal Rule of Civil Procedure 12 ........................................................................ 2

Federal Rule of Civil Procedure 15 ........................................................................ 14

Federal Rule of Civil Procedure 8 .......................................................................... 2

### Other

https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-
        county-implement-sweeping-reforms-mental ................................................ 8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED
COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This civil rights and state tort action arises from the death of Ryan Willcox on January 11, 2024, following him hanging himself with a bedsheet in his cell at Twin Towers Correctional Facility ("TTCF") on January 7, 2024.  Plaintiffs, who are the parents of decedent Mr. Willcox, bring their claims individually and as successors in interest to Mr. Willcox.  The Los Angeles County Sheriff's Department ("LASD") and TTCF custodial staff were aware that Mr. Willcox was at risk of suicide, which was apparent by the fact that, at the time of the incident, Mr. Willcox was housed in Module 251, which houses inmates who are classified as SMR (Suicidal, Mental, Restraint), who are in administrative segregation due to suicidal thoughts and attempts. (Plaintiffs' First Amended Complaint "FAC" at ¶ 23).  According to the limited information available to Plaintiffs at this time, Defendant Deputy D. Burmak, who was assigned to conduct Title 15 Safety Checks in Module 251 on January 7, 2024, found Mr. Willcox sitting on the floor of his cell with a white piece of fabric wrapped around his neck and tied to the top portion of his bunk.  (*Id.* at ¶ 25).  Pursuant to Title 15 and basic police training, suicide watch protocols require frequent in-person monitoring of inmates at approximately 15-minute intervals by custodial staff.  (*Id.* at ¶ 29).  As alleged in Plaintiffs' First Amended Complaint ("FAC"), any competent custodial officer, including those named as individual defendants and "Doe" defendants in this lawsuit, would have provided heightened levels of supervision and monitoring to Mr. Willcox, and would have removed any suicide hazards such as a bedsheet from Mr. Willcox's cell, such that his suicide would have been prevented.

Defendants County of Los Angeles, Deputy Quiroz, Deputy Guerrero, Deputy Jimenez, Deputy Gurrola, Deputy Rios, Sergeant Sanchez, and Sergeant Ohandjanian have brought a motion to dismiss portions of Plaintiffs' FAC ("Motion") (Dkt. 37).  Plaintiffs hereby oppose the Motion and respectfully request

-1-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

1    that if this Court is inclined to dismiss any of Plaintiffs' claims or any named
2    defendants at this early stage of the case, then this Court do so without prejudice and
3    with leave to amend.  The discovery period in this case has only just begun, and the
4    specific factual information regarding the events surrounding Mr. Willcox's hanging
5    is in the custody, possession and control of the Defendants bringing the instant
6    Motion.  Plaintiffs anticipate receiving additional information regarding this incident
7    within the coming weeks as discovery in this case progresses.

8    **II.    LEGAL STANDARD**

9         Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with
10   Federal Rule of Civil Procedure 8, which "marks a notable and generous departure
11   from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556
12   U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain
13   statement of the court's jurisdiction, (2) a short and plain statement of the claim
14   showing that the plaintiff is entitled to relief, and (3) a demand for judgment and
15   relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191,
16   1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege
17   "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic
18   Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[O]nce a claim has been stated
19   adequately, it may be supported by showing any set of facts consistent with the
20   allegations in the complaint." *Id*. at 563.  In deciding whether a pleading states a
21   plausible claim for relief, the court considers the complaint's factual allegations,
22   "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex
23   rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011);
24   *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009).  "A claim has facial
25   plausibility when the plaintiff pleads factual content that allows the court to draw
26   the reasonable inference that the defendant is liable for the misconduct alleged."
27   *Ashcroft*, 556 U.S. at 662.

28

1    Further, under federal notice pleading, courts are liberal in construing

2    complaints in favor of plaintiffs, and allegations of material fact are taken as true

3    and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551

4    U.S. 89, 94 (2007); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th

5    Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of

6    Civil Procedure Rule 12(b)(6), the court must accept all material allegations in the

7    complaint as true and construe them in the light most favorable to the appellant. *N.*

8    *Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). In *Conley v.*

9    *Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that

10   dismissal for failure to state a claim should only be granted under narrow

11   circumstances, and complaints should not be dismissed unless it appears beyond

12   doubt that the plaintiff cannot prove any facts supporting her claim entitling her to

13   relief. *Conley*, 355 U.S. at 45-46.

14   Civil rights actions are governed by the pleading requirements of Federal

15   Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

16   There is no heightened pleading requirement for civil rights cases, and the United

17   States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to

18   impose heightened pleading requirements in civil rights cases. *Id*., *Leatherman v.*

19   *Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a

20   plaintiff has an obligation to put the defendants and the court on notice of what

21   claims are raised in his or her complaint by properly alleging that she has been

22   deprived a federal statutory or constitutional right by a person acting under color of

23   state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

24   Alternatively, where a motion to dismiss is granted, a district court must

25   decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal

26   policy favoring amendments and, thus, leave to amend should be freely granted.

27   *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

28   //

-3-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

## III.    ARGUMENT

### A. Plaintiffs' Claims Under 42 U.S.C. § 1983 Adequately Allege Each Defendant's Personal Involvement

Defendants first argue that Plaintiffs' § 1983 claims (Claims 1-6) should be dismissed. Under the pleading standard articulated above, Plaintiffs have sufficiently pled facts to demonstrate each individual defendants' violations of Mr. Willcox's constitutional rights.  There is no heightened pleading standard in civil rights cases like this one, such that Plaintiffs are permitted to allege facts based on "information and belief."  As specifically alleged in Plaintiffs' FAC, "[p]rior to [Mr. Willcox] passing away on January 11, 2024, [he] was housed in Module 251, which houses inmates who are classified as "SMR" (Suicidal, Mental, Restraint), who are in administrative segregation due to suicidal thoughts and attempts."  (FAC at ¶ 24). Based on Mr. Willcox's housing status, these Defendants knew or should have known that Mr. Willcox was suicidal or suffering from a mental illness, requiring special precautions.  (*Id*. at ¶¶ 23, 42).  Plaintiffs have identified the "Deputy Defendants" as individual deputies Burmak, Quiroz, Guerrero, Jimenez, Gurrola, and Rios.  (*Id*. at ¶ 9).  These are the deputies who were on duty at the time of Mr. Willcox's hanging and who were responsible for conducting Title 15 Safety Checks, monitoring Mr. Willcox, and ensuring that he did not have access to objects with which he could harm or kill himself. (*Id*. at ¶ 25).  Plaintiffs have identified the "Sergeant Defendants" as Sergeant Sanchez and Sergeant Ohandjanian, who were also on duty at the time of this incident and were "responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California."  (*Id*. at ¶ 10).

Plaintiffs' FAC further specifically alleges that "[o]n January 7, 2024, at approximately 4:00 p.m., Defendant Deputy Burmak observed [Mr. Willcox] sitting on the floor of his cell (#13) in Module 251 of the TTCF. At that time, [Mr.

Willcox] had a bedsheet or portion of a bedsheet wrapped around his neck and tied to the top portion of his bunk bed. [Mr. Willcox] had attempted to commit suicide by hanging himself from the bunk bed using a bedsheet. [Mr. Willcox] was unresponsive." (FAC at ¶ 25). As asserted in Plaintiffs' §1983 claims against the Deputy Defendants, Sergeant Defendants, and Doe Correctional Officers (Claims 1-3), Mr. Willcox was reliant on these individual defendants to provide medical care to him in the form of suicide prevention, and prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984); (FAC at ¶¶ 44, 65, 82, 83). Plaintiffs have specifically set forth measures these individual defendants who were on duty at the time of this incident were responsible for taking, but failed to take, including: (1) failing to place Mr. Willcox in a cell that was continuously monitored; (2) failing to continuously monitor Mr. Willcox to ensure that he did not injure or kill himself; (3) failing to remove items from Mr. Willcox's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself; (4) failing to comply with Title 15 suicide watch protocols and basic police training; (5) failing to provide Mr. Willcox with proper screening for fitness for incarceration; (6) failing to address Mr. Willcox's suicidal state and summoning related medical and/or mental health care. (*Id*. at ¶¶ 45, 49, 66). In addition, Plaintiffs have specifically alleged that Sergeant Defendants were responsible for training the named deputies and "Doe Deputies" and supervising the above conduct. (*Id*. at ¶ 83). Plaintiffs further contend in their FAC that the individual defendants' failures to comply with these suicide watch protocols directly resulted in Mr. Willcox's death. (*Id*. at ¶¶ 52, 59, 73, 75, 89).

Further, Plaintiffs have sufficiently plead *Monell* liability (municipal liability) against the County and Does 9-10 (Claims 5-6). Plaintiffs allege in Claim 5 that the County and Does 9-10 failed to adequately train its deputies and correctional officers at LASD and the TTCF to handle the usual and recurring situations with

which they must deal, including but not limited to medical/mental health screening
during intake at TTCF, the provision of prompt and adequate medical/mental health
care to suicidal inmates (in the form of suicide prevention), and the implementation
of suicide watch protocols for inmates who pose a known risk of self-harm and/or
suicidal proclivity. (FAC at ¶ 83). Plaintiffs allege in Claim 6 that Sergeant
Defendants and Deputy Defendants acted pursuant to an expressly adopted official
policy or a longstanding practice or custom of Defendant County, including
"unconstitutional policies of: not providing inmates with immediate screening by a
Doe Healthcare Provider to evaluate the overall fitness of those in custody for
incarceration; failing to provide and failing to summon ongoing medical and mental
health attention to suicidal inmates in the form of suicide prevention; failing to
follow suicide watch protocols; failing to prevent inmates from injuring and/or
killing themselves, including by failing to conduct Title 15 checks, failing to place
suicidal inmates in a safety cell, and failing to monitor the live video feed showing
the cells of suicidal inmates; allowing inmates known to be suicidal, including those
classified as 'SMR' to have a bedsheet in their cell; not monitoring the medication
of suicidal inmates; not placing inmates known to be suicidal on suicide watch; and
generally mishandling situations with individuals who suffer from mental health
issues." (FAC at ¶ 116).

    The foregoing allegations are sufficient to assert *Monell* claims. The Ninth
Circuit has "long recognized that a custom or practice can be inferred from
widespread practices or evidence of repeated constitutional violations for which the
errant municipal officials were not discharged or reprimanded." *Hunter v. City of
Sacramento*, 652 F.3d 1225, 1233-34, 1236 (9th Cir. 2011) (uninvestigated and
unpunished); *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 986 (N.D. Cal. 2013)
("'[T]he failure of an official to take any remedial steps after the violations' can
indicate a deliberate choice and establish a basis for liability") (quoting *Gomez v.
Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)); *Oviatt v. Pearce*, 954 F.2d 1470,

-6-

1474 (9th Cir. 1992) (inaction); Ninth Cir. Model Jury Instruction 9.7 (same); *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016) (same). "It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see Waggy v. Spokane Cty.*, 594 F.3d 707, 713 (9th Cir. 2010) (noting that a policy can be one of action or inaction – through its omissions the municipality is responsible).

      Although Plaintiffs contend that they have sufficiently allege specific unconstitutional customs and policies in their FAC, Plaintiffs are not required to plead a precise policy at this stage.  It is rare when a plaintiff has access to a precise policy or custom prior to engaging in discovery, and "requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *See Osuna v. City of Stanislaus*, 392 F. Supp. 3d. 1162, 1174 (E.D. Cal. 2019); *Estate of Sanchez v. City of Stanislaus*, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, at *5 (E.D. Cal. Apr. 18, 2019); *Creer v. Vallejo*, No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015).  District courts have repeatedly noted that details of an alleged custom or policy need not be pled as the parties can develop such topics by engaging in discovery, and that only minimal factual allegations are required at the motion to dismiss stage.  *See Creer*, 2015 WL 3795027, at *5; *Guevara v. City of Los Angeles*, No. CV 14-08120 DDP, 2015 WL 224727, at *3 (C.D. Cal. Jan. 15, 2015); *Galvan v. City of Vacaville,* No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896, at *5 (E.D. Cal. Sept. 5, 2018); *Halcomb v. City of Sacramento*, No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357, at *4 (E.D. Cal. June 22, 2016); *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *5 (N.D. Cal. Dec. 2, 2011); *Mitchell v. Twp. of Pemberton*, No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010).

      As alleged in Plaintiffs' FAC, the County of Los Angeles and Does 9-10 have been on notice of the risks of failing to provide adequate suicide prevention to

inmates at Los Angeles County jails, such that the County and Does 9-10 should have had adequate training policies in place to prevent suicides like Mr. Willcox's. As asserted in Plaintiffs' FAC, approximately thirty (30) inmates died in Los Angeles County jails in 2024, and seventy-five (75) inmates have died in Los Angeles County jails since the beginning of 2023. https://www.vera.org/news/la-county-jail-deaths.  The manner of many of these deaths has been suicide, with at least twenty-nine (29) inmates dying by suicide between January 2018 through December 2024. https://www.latimes.com/california/story/2024-03-26/why-was-2023-such-a-deadly-year-in-los-angeles-county-jails; https://lasd.org/transparency/icd/. (FAC at ¶ 108).

Plaintiffs sufficiently allege in paragraphs 38 and 107 of Plaintiffs' FAC that Defendants have had notice of this history of in-custody deaths at Los Angeles County jails, including by way of the 2015 federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, which alleged that the County of Los Angeles had an unconstitutional custom, practice, and policy of maintaining inadequate suicide prevention practices (United States District Court, Central District of California, Case No. 15-5903). *See* https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental. In 2015, on the same day that the aforementioned lawsuit was filed, the United States Department of Justice "reached a comprehensive settlement agreement with the county of Los Angeles and the Los Angeles County Sheriff to protect prisoners from serious suicide risks . . . in the Los Angeles County Jails." *Id*.  The "settlement [purported to resolve] claims stemming from the Justice Department's long-standing civil investigation into mental health care at the jails, which found a pattern of constitutionally deficient mental health care for prisoners, including inadequate suicide prevention practices." *Id*.  (FAC at ¶ 107). Specifically, Defendants were on notice that inmates on suicide might try to commit suicide using a bedsheet to hang themselves. (FAC at ¶ 109).

The foregoing allegations in Plaintiffs' § 1983 claims comply with the liberal federal notice pleadings articulated above. *See, e.g.*, *Twombly*, 550 U.S. at 570; *Ashcroft*, 556 U.S. at 662. If this Court disagrees, then Plaintiffs respectfully request leave to amend after they have had an opportunity to conduct discovery in this case.

**B. Plaintiffs' Claims for Supervisory Liability under 42 U.S.C. § 1983 Allege Specific Facts and Assert that the Sergeant Defendants' Acts or Omissions Caused Mr. Willcox's Death**

Contrary to Defendants' argument that Plaintiffs' allegations against the Sergeant Defendants lack factual support, Plaintiffs have not "merely lumped together the Seargeant Defendants with the Deputy Defendants" as Defendants' Motion alleges. Plaintiffs' FAC asserts that the Sergeant Defendants should have known that Mr. Willcox was suicidal because of his housing situation and classification as "SMR." (FAC at ¶ 23). The FAC further asserts that all Defendants, including Sergeant Defendants, were on notice of the dangers existing at TTCF through a long history of in-custody deaths; specifically, that inmates on suicide watch might try to commit suicide by using a bedsheet to hang themselves. *See United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903. (FAC at ¶ 36).

In addition, Plaintiffs' FAC sufficiently asserts that Sergeant Defendants integrally participated in the violation of Mr. Willcox's constitutional rights when they failed to supervise this incident and the other named defendants. (FAC at ¶¶ 92-100). Sergeant Defendants' responsibilities and failures set forth in the FAC include: (1) failing to properly train Deputy Defendants and Doe Correctional Officers, including with respect to suicide protocols and complying with Title 15; (2) failing to ensure that their subordinates, the Deputy Defendants and Doe Correctional Officers were checking on Mr. Willcox in compliance with title 15; (3) ensuring that

Deputy Defendants and Doe Correctional Officers were making sure that Mr. Willcox received the mental health care and medical attention in the form of suicide prevention that Mr. Willcox required; (4) failing to supervise Deputy Defendants and Doe Correctional Officers to ensure that they were continuously monitoring Mr. Willcox; and (5) failing to check Mr. Willcox's cell to make sure that he did not have access to objects he could use to harm himself. (*Id.* at ¶ 95).

Defendants' second argument, that Plaintiffs' FAC does not establish causation as to the Sergeant Defendants, is also unpersuasive. Plaintiffs' FAC clearly alleges that the above-articulated actions and inactions resulted in Mr. Willcox's death. (*Id.* at ¶¶ 95-96). "The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present, and the plaintiff was deprived under color of law of a federally secured right." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Supervisors like the Sergeant Defendants may be held liable under § 1983 "for [their] own culpable action or inaction in the training, supervision, or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208. Liability is established where "a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003).

Plaintiffs have a good faith basis for believing that their discovery efforts will disclose further evidence that the constitutional deprivations at issue were a manifestation of the Defendant Sergeants' culpable conduct, such as maintaining inadequate training programs, hiring officers with a known propensity for unlawful conduct, failing to supervise the deputy defendants who were responsible for monitoring Mr. Willcox on the date of the incident, as well as their integral participation and failure to intervene during this incident. Defendants' argument that Plaintiffs' supervisory liability claim "is unsupported by any factual allegations" is

-10-

not compelling. For the foregoing reasons, Plaintiffs' claim for Supervisory Liability under § 1983 should not be dismissed.

**C. Defendants Are Not Immune on Plaintiffs' State Law Claims**

Defendants' argument that Defendants are immune on Plaintiffs' state law claim for denial of medical care is unpersuasive. Defendants' Motion appears only to challenge the timing of the medical response to Mr. Willcox after he hung himself. (Mot. at pp. 8-9). Plaintiffs' state law claim for failure to summon medical attention clearly includes Defendants' failures to provide "ongoing suicide prevention to [Mr. Willcox], both on January 7, 2024, and during the days and weeks leading up to that date. Suicide prevention includes ensuring that [Mr. Willcox] received: mental health attention, suicide evaluations, a safe cell that did not include items he could use to harm himself, and continuous monitoring in compliance with TTCF suicide protocols and Title 15." (FAC at ¶ 149). Defendants are not entitled to immunity under state law where the inmate is in obvious need of medical care. In this case, Mr. Willcox's "obvious need of medical care" includes his need for mental health attention, mental health screenings, counseling, evaluations by psychologists, and suicide evaluations. (FAC at ¶ 150).

Plaintiffs' FAC makes the following specific allegations as to this claim: Doe Correctional Officers, Sergeant Defendants, and Deputy Defendants were responsible for: ensuring that Doe Healthcare Providers were summoned for Mr. Willcox and/or made available to Mr. Willcox throughout his incarceration to evaluate his suicide risk; ensuring that Mr. Willcox was in a suicide compliant cell; monitoring Mr. Willcox; as to the Sergeant Defendants, ensuring that Doe Correctional Officers and Doe Defendants were monitoring Mr. Willcox. Doe Correctional Officers, Sergeant Defendants, and Deputy Defendants failed to fulfill these responsibilities. Despite Defendants' actual knowledge that Mr. Willcox was in need of immediate medical and mental health care in the form of suicide prevention as alleged above, Doe Correctional Officers, Sergeant Defendants, and

Deputy Defendants absconded their duties instead of providing medical attention in the form of suicide prevention to Mr. Willcox. Doe Correctional Officers, Sergeant Defendants, and Deputy Defendants failed to place Mr. Willcox in a suicide watch compliant cell when he was known to be suicidal and have a propensity for self-harm, including placing him in a cell with bedsheet(s) and a bunk bed, which Mr. Willcox foreseeably used to hang himself; failed to adequately monitor and supervise Mr. Willcox at the required 15 to 20 minute intervals; failed recognize and identify indications of suicidal tendencies; failed to get mental health treatment for Mr. Willcox to prevent his suicide. (FAC at ¶ 153).

Pursuant to California Government Code § 844.6(d), a public employee or the government entity is not immune from liability for injury to any prisoner proximately caused by its employee's negligent conduct. (FAC at ¶¶ 139, 146). Further, California Government Code § 820(a) states that except as otherwise provided by statute, a public employee is liable by his act or omission to the same extent as a private person. (*Id*). Additionally, "classification of the act of a public employee as 'discretionary' will not produce immunity under state law, including California Government Code § 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969).

Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. *Sanders v. Yuba Cnty.*, 247 Cal. App. 2d 748 (Ct. App. 1967).  Here, Plaintiffs have alleged that all of the Defendants were acting within the scope of their employment at all relevant times. Plaintiffs have also alleged that Defendants knew that Mr. Willcox was in need of immediate medical attention in the form of suicide prevention based on his housing

-12-

status.  (FAC at ¶¶ 135, 143, 153, 161.)  As asserted in Plaintiffs' FAC, the County is vicariously liable for the wrongful acts of all named Defendants employed by the County pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. (*Id*. at ¶¶ 139, 146, 155, 168.)

For each of the foregoing reasons, none of the defendants are entitled to immunity under state law.

**D. Plaintiffs' Claim for Violation of the Bane Act Survives**

The Ninth Circuit has stated that "reckless disregard" for a person's constitutional rights is evidence of a violation of the Bane Act.  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (holding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)). Plaintiffs have set forth sufficient facts in their FAC to establish that the individual defendants acted with a reckless disregard for Mr. Willcox's constitutional rights. The Deputy Defendants and the Sergeant Defendants had specific knowledge of Mr. Willcox's suicidal ideation but failed to take action to protect him. (FAC at ¶ 160). Plaintiffs adequately set forth their allegations as follows:

> DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS failed to continuously monitor DECEDENT; failed to place him in a cell where he would be continuously monitored; failed to remove items from DECEDENT's cell that he could use to harm himself, including his bunk bed and bedsheet that he ultimately used to hang himself; absconded their duties rather than watching DECEDENT; failed to check on DECEDENT at 15 or 20-minute intervals as required by suicide protocols, Title 15, and basic police training; failed to ensure that DECEDENT received appropriate medical attention in the form of suicide prevention; failed to ensure that DECEDENT received appropriate mental health care; failed to summon a psychologist or other mental health processional for DECEDENT; failed to ensure that timely life-saving measures were provided to DECEDENT after he hung

-13-

himself. These actions and omissions on the part of DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS demonstrate a reckless disregard for DECEDENT's constitutional rights.

(FAC at ¶ 163).

SERGEANT DEFENDANTS failed to: train the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS on Title 15 and suicide protocols; ensure that their subordinates, the DEPUTY DEFENDANTS and DOE CORRECTIONAL OFFICERS were checking on DECEDENT in compliance with Title 15, getting DECEDENT the suicide prevention he needed, including from mental health professionals, and making sure DECEDENT's cell was suicide compliant. These actions and omissions on the part of SERGEANT DEFENDANTS demonstrate a reckless disregard for DECEDENT's constitutional rights.

(FAC at ¶ 164).

Defendants' reckless disregard is also evident by their prior knowledge of a long history of complete disregard to inmate safety and protection at County jails. (FAC at ¶ 162). Defendants were on notice of the dangers existing at TTCF through a long history of in-custody deaths. *See McDonnell*, *supra*, Case No. 15-5903. (*Id.*). When Defendants engaged in their misconduct and inactions described in the FAC and set forth above, despite this prior notice, Defendants acted with reckless disregard for Mr. Willcox's constitutional rights, including his constitutional right to timely and adequate medical attention in the form of suicide prevention. (FAC at ¶ 166). Defendants are also not immunized on this claim under state law. On these grounds, Plaintiffs submit that this claim is not subject to dismissal at this time.

**E. Plaintiffs Request Leave to Amend**

Should this Court be inclined to grant Defendants' Motion, then Plaintiffs respectfully request that they be permitted to amend their Complaint to cure any deficiencies identified by the Court. Federal Rules of Civil Procedure, Rule 15(a)(2), provides that leave to amend "shall be freely given when justice so requires." The Ninth Circuit has held that "[t]his policy is applied with 'extraordinary liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

-14-

1051 (9th Cir. 2003) (quoting *Ownes v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *DeSoto*, 957 F.2d at 658. Indeed, "leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martinez v. Newport Beach City*, 125 F3d 777, 785 (9th Cir. 1997).

## IV.    CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request an order denying Defendants' Motion to Dismiss. If the Court identifies any deficiencies in the pleading of claims, then Plaintiffs request that the claims be dismissed *without prejudice* and with leave to amend.

DATED: March 7, 2025                   LAW OFFICES OF DALE K. GALIPO

By:  *s/ Renee V. Masongsong*
_____
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiffs Richard Willcox
and Kathleen Rosas

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

1

## <u>CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)</u>

2      The undersigned, counsel of record for Plaintiffs, certifies that this brief

3 contains 4,850 words, which complies with the word limit of L.R. 11-6.1.  This

4 word count was calculated based on the word processing system.

5

6 DATED: March 7, 2025        LAW OFFICES OF DALE K. GALIPO

7               By: _s/ Renee V. Masongsong_

8               Dale K. Galipo
Renee V. Masongsong
9               Attorneys for Plaintiffs Richard Willcox
and Kathleen Rosas

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28