**JILL WILLIAMS-STATE BAR NO. 221793**
**ALEXANDER S. RYNERSON-STATE BAR NO. 329956**
**CARPENTER, ROTHANS & DUMONT LLP**
500 S. Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400 / (213) 228-0401 (Fax)
JWilliams@CRDLaw.com; ARynerson@CRDLaw.com

Attorneys for Defendants
County of Los Angeles, Deputy Quiroz, Deputy Guerrero, Deputy Jimenez, Sergeant Sanchez, Deputy Gurrola, Deputy Rios and Sergeant Ohandjanian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLCOX and KATHLEEN ROSAS, in each case individually and as successor in interest to Ryan WILLCOX, deceased,<br><br>Plaintiffs.<br><br>v.<br><br>COUNTY OF LOS ANGELES; DEPUTY D. BURMAK (#676810); DEPUTY QUIROZ (#617296); DEPUTY GUERRERO (#656468); DEPUTY JIMENEZ (#659993); DEPUTY GURROLA (#629159); DEPUTY RIOS (#661762); SERGEANT SANCHEZ (#514312); SERGEANT OHANDJANIAN (#466327); and DOES 1-10, inclusive,,<br><br>Defendants. | Case No. 2:24-cv-08790-SRM-MAR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:      April 10, 2025<br>Time:      8:30 a.m.<br>Courtroom:  9B |

COME NOW Defendants County of Los Angeles, Deputy Quiroz, Deputy Guerrero, Deputy Jimenez, Sergeant Sanchez, Deputy Gurrola, Deputy Rios and Sergeant Ohandjanian and submit this memorandum of points and authorities in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Portions of the First Amended Complaint.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PLAINTIFFS' ALLEGATIONS OF INDIVIDUAL DEFENDANT INVOLVEMENT ARE PLAINLY CONCLUSORY, SPECULATIVE, AND INCORRECT

It is well established that even under notice pleading, a plaintiff's complaint cannot survive a motion to dismiss when it fails to identify how each individual defendant was personally involved in a constitutional violation. Vance v. County of Santa Clara, (1996) 928 F.Supp. 993, 997 (N.D. Cal. 1996) [a plaintiff "must *identify how each of the individual defendants is alleged to have violate the Plaintiffs' civil rights*… This task is not onerous…"] [emphasis added]. Indeed, such personal involvement must allege "with at least some degree of particularity overt acts in which these Defendants engaged." Jones v. Comm. Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984). "A plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8, subdivision (a)(2)'…" Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014) [quoting Gauvin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988)].

Plaintiffs' allegations in this respect fall short. Even taking all of the allegations as true, the only individual Defendant whose personal involvement was factually alleged in any way was Deputy Burmak. First Amended Complaint ("First Am. Compl."), ¶ 25.) Plaintiffs have lumped together Deputies Burmak, Rios, Quiroz, Guerrero, and Jimenez as being "responsible for monitoring DECEDENT… and making sure that he did not attempt to injure or kill himself." Id. Plaintiffs continue to treat each of the deputies' actions as being part of a collective, in that the "DEPUTY DEFENDANTS did not continuously monitor DECEDENT or check on him…" Id. Plaintiffs continue in a similar vein by claiming that all of the Deputy Defendants, without any specification as to what each may have done, released Mr. Willcox in a callous fashion, though this allegation is couched upon pure

-1-

speculation. First Am. Compl., ¶ 26. Plaintiffs also lump together the Deputy Defendants with the Sergeant Defendants. First Am. Compl., ¶¶23, 26, 31, 32, 37.

To allow such conclusory claims to proceed, without more, would impermissibly unlock the doors to the discovery panoply and impose undue burden and prejudice upon each defendant, who largely remain ignorant as to what they allegedly did wrong. Via v. City of Fairfield, 833 F.Supp.2d 1189, 1196 (E.D. Cal. 2011). This effectively denies each defendant the ability to plead intelligently. Flores, supra, 997 F.Supp.2d at 1103 [citing Van Dyke Ford, Inc. v. Ford Motor Co., 399 F.Supp. 277, 284 (D. Wis. 1975)]. Without sufficient facts "to differentiate between the actions of each individual defendant and the actions of the group as a whole," Plaintiffs have failed to satisfy their burden under Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See VanZandt v. Oklahoma Dept. of Human Services, 276 Fed.Appx. 843, 849 (10th Cir. 2008); accord, Russo v. Fed. Med. Services, Inc., 744 F.Supp.3d 914, 922 ["Undifferentiated group pleading that does not indicate which individual defendant or defendants were responsible for which wrongful act is impermissible under Rule 8 because it fails to provide such notice."].

## II. PLAINTIFFS' CLAIM AGAINST THE COUNTY FOR MONELL LIABILITY FAILS TO PLAUSIBLY PLEAD A WIDESPREAD CUSTOM OR PRACTICE

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Notably, Plaintiffs rely upon the premise that a "policy or practice" under Monell can be inferred from "widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Hunter v. City of Sacramento, 652 F.3d 1225, 1233-34 (9th Cir.

REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

2011). However, a review of Plaintiffs' authority, compared against the facts of this case, make clear that no widespread practice of repeated constitutional violations attributable to any of the defendants is plausibly stated.

From the outset, the facts pleaded regarding Willcox's death are alleged in a vacuum. While Plaintiffs are alleging that a widespread policy and/or custom permeates the Los Angeles County Sheriff's Department, they do not provide the Court with any facts which removes their allegations from the realm of conclusions and speculation. Simply put, Plaintiffs have provided no facts whatsoever which might put Mr. Willcox's suicide into context within the full perspective of the Department's operations.

If the Court were to adopt Plaintiffs' proffered authority, <u>United States of America v. County of Los Angeles, et al.</u>, it must also consider that the Los Angeles County Sheriff's Department operates the Los Angeles County Jail system ("LA Jail System"), which is the largest such system *in the world*, attending to 15,500 to 19,500 inmate *per day*. Declaration of Alexander S. Rynerson ("Rynerson Decl."), ¶ 2, Ex. A – Stipulated Settlement, at 13:3. Applying Plaintiffs' own accounting of inmate suicides from 2018 to 2024 (29) underscores the lack of any custom, practice or policy, as inmate suicides comprise only .000065% of the average total inmate population from 2018 to 2024 (according to Plaintiffs' numbers). Thus, even adopting Plaintiffs' proffered authority, they have failed to put Mr. Willcox's suicide into context within the genuine scope of the Department's operations, which is necessary to plausibly allege a "widespread" custom or practice. Otherwise, Plaintiffs' allegations exist solely in the world of improper speculation and conclusion. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

Additionally, <u>United States of America v. County of Los Angeles, et al.</u>, is also inapplicable to providing any of the Defendants with notice of the allegedly deficient operations of the TTCF, as Plaintiffs argue. Opposition, 9:14-20. As Plaintiffs concede, a settlement was reached in this case in 2015, *nine years* before Mr.

-3-

REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

Willcox's passing. Plaintiffs fail to make any logical connection between the 2015 case and any actions of any of the Deputy Defendants or Sergeant Defendants which led to an unconstitutional practice causing Mr. Willcox's death. See Flores v. Cnty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) ["The isolated incidents of criminal wrongdoing by one deputy other than [defendant] do not suffice to put the County . . . on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.'"]; Gant v. Cnty. of Los Angeles, 772 F.3d 608, 618 (9th Cir. 2014) [reiterating that "a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."]

Finally, within the context of a failure to train claim under Monell, as Plaintiffs allege, the Supreme Court long ago explained in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) why a plaintiff must plead facts to establish that a municipality was on notice that the training or policy was itself inadequate, while an incident taken in isolation is generally insufficient. Id. at 391–92. Plaintiffs have failed to plausibly allege how the County or Sheriff's Department were on notice that there was a *present* unconstitutional policy or custom within the LA Jail System.

Ultimately, the numbers do not lie. The unfortunate passing of .000087% of the LA Jail System's inmate population does not, and cannot, plausibly establish a "widespread" unconstitutional policy or custom. The Court should therefore reject Plaintiffs' plainly conclusory and self-serving allegations which are plainly not representative of the genuine state of facts. In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

///

///

///

### III. PLAINTIFFS' CLAIMS AGAINST THE SERGEANT DEFENDANTS ARE CONCLUSORY AND FAIL TO PUT DEFENDANTS ON NOTICE OF THEIR ALLEGEDLY WRONGFUL CONDUCT

Plaintiffs' allegations regarding the alleged acts and omissions of the Sergeant Defendants fall short of the pleading requirements set forth under Rule 8. While it is true that Plaintiffs offer conclusory allegations of various theories of liability for the Sergeant Defendants as a whole, there must come a point at which the Court must differentiate between a fishing expedition, as we see here, and allegations supported by a genuine *factual basis*, of which Plaintiffs have none. Conclusory statements, like those upon which Plaintiffs rely, need not be accepted as true and do not plausibly establish a factual basis for their claims. Iqbal, supra, 556 U.S. at 678-79; e.g., Zimmerman v. Peacehealth, 701 F.Supp.3d 1099, 1120 (W.D. Wa. 2023)

Moreover, Plaintiffs have conceded that their allegations against the Sergeant Defendants are couched in an improperly collective fashion. There is not a single allegation in the First Amended Complaint which specifies or otherwise distinguishes the alleged wrongful acts of each of the Sergeant Defendants. First Am. Compl., ¶¶ 92-100. This is insufficient to satisfy Rule 8. Flores, supra, 997 F.Supp.2d at 1103; accord, Zimmerman, supra, 701 F.Supp.3d at 1119 ["in a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group."]; accord, Evans v. Sherman, 2020 WL 1923176 at p. 3 (E.D. Cal. 2020) [noting that a plaintiff who simply lumps all defendants together makes it impossible for the court to draw necessary connections between their actions or omissions of the various defendants.]

While Plaintiffs allege that Sergeant Sanchez was present when the Deputy Defendants cut him down, Plaintiffs make clear that Sergeant Sanchez had no part to play in the way the deputies rescued Mr. Willcox. First Am. Comp., ¶ 26. There are no allegations whatsoever regarding Sergeant Sanchez's purported wrongdoings. The

-5-

Case 2:24-cv-08790-SRM-MAR   Document 42   Filed 03/14/25   Page 7 of 13   Page ID #:383

allegations against Sergeant Ohandjanian are even more deficient; he is not mentioned once beyond establishing he is a party to this lawsuit.

Taken together, Plaintiffs' allegations, at best, turn on the alleged misconduct of one or two deputies, not on "pervasive and widespread conduct posing an unreasonable risk of constitutional injury," necessary to plead a claim of supervisory liability under 42 U.S.C. § 1983. Doe v. City of San Diego, 35 F.Supp.3d 1214, 1218-19 (S.D. Cal. 2014). All of the allegations regarding the Sergeant Defendants concern general duties to supervise the operations of the TTCF, which is insufficient to plead a claim for supervisory liability. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); see also, Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989)

IV. **THE FIRST AMENDED COMPLAINT DOES NOT ALLEGE FACTS TO SUPPORT A CLAIM THAT DEPUTIES FAILED TO PROMPTLY SUMMON MEDICAL ATTENTION AFTER IT WAS DISCOVERED THAT MR. WILLCOX HAD AN IMMEDIATE NEED FOR MEDICAL ATTENTION**

In Opposition, Plaintiffs argue two points: (1) that Mr. Willcox's need for "immediate" medical attention was ongoing from the moment he was admitted in SMR; and (2) the alleged 11-minute period from the time Mr. Willcox was first observed until paramedics arrived was insufficiently "prompt". Neither point is availing.

First, precedent is clear that the duty to summon medical care only arises when the need for medical care was both immediate and apparent. Watson v. State of Cal., 21 Cal.App.4th 836 (1993). The fact that Mr. Willcox is alleged to have been on a 5150 hold does not mean that he was in immediate and apparent need for medical care at that time, and Plaintiffs have provided no allegations to establish that his pre-suicide need was immediate and apparent, or should have been apparent to a custody deputy. Nor does the duty to summon medical care extend to furnishing, monitoring, following up, or providing subsequent care for the same condition as

-6-

REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

1 | Plaintiffs argue, which in this instance would be Mr. Willcox's mental condition
2 | and/or suicidal ideation. Castaneda v. Dept. of Corrections & Rehab., 212
3 | Cal.App.4th 1051, 1074 (2013). Thus, the duty to summon medical care did not arise
4 | until 4 p.m. on January 7, 2024, when Mr. Willcox was first discovered in his cell.
5 | Plaintiffs' arguments that liability should arise from a failure to provide medical care
6 | when its need was neither immediate nor apparent, and to monitor and continue to
7 | monitor Mr. Willcox are therefore unavailing in light of the immunity provided by
8 | Government Code section 844.6.

Regarding the second argument, Plaintiffs argue in their opposition that there was an 11-minute "delay" in providing medical care to Mr. Willcox. That argument is inconsistent with the First Amended Complaint's allegations, which alleges that Mr. Willox was found in his cell by Deputy Burmak at 4 p.m. (First Am. Compl., ¶ 25) and that, afterwards, Deputies Rios, Quiroz, Guerrero, and Jiminez responded to the cell and freed Mr. Willcox from the noose (Id. at ¶ 26). The First Amended Complaint further alleges that within 13 minutes of Mr. Willcox being found, Los Angeles County Fire Department personnel (who respond from outside the jail after being summoned to the jail) were on scene and providing emergency medical treatment to Mr. Willcox. Id., at ¶¶ 25-27. The First Amended Complaint does not allege (nor can be amended to allege) that Deputy Burmak, nor any of the other deputies who responded to the cell after Mr. Willcox was found, did nothing during that 13-minute period of time or that they failed to immediately summon medical care for Mr. Willcox. Indeed, the fact that paramedics from the Los Angeles County Fire Department were at the jail and at Mr. Willcox's side within 13 minutes of Mr. Willcox being found establishes that medical care was immediately summoned. Plaintiffs offer no allegations as to Mr. Willcox's condition in the days preceding his suicide attempt, which might otherwise establish that he had an immediate need of medical attention before he was discovered in his cell at 4 p.m.

Plaintiffs' proffered authority does not dispute the foregoing. In McCorkle v.

-7-

1  City of Los Angeles, 70 Cal.2d 252, 261 (1969), the California Supreme Court
2  analyzed whether immunity under Government Code section 820.2 applied to
3  immunize a police officer who had stopped to investigate an automobile collision.
4  Id., at 255. As he conducted his investigation, he asked the plaintiff to approach him
5  in the middle of an intersection without lighting the area using flares, though he did
6  use a flashlight to alert incoming traffic of their presence. Id., at 259-60. Thereafter,
7  Plaintiff was struck by a car that entered the intersection. Id., at 260. The Court held
8  that discretionary immunity did not apply, when the plaintiff's injury resulted "not
9  from the employee's exercise of discretion vested in him to undertake the act, but his
10 negligence in performing it after having made the discretionary decision to do so.
11 Id., at 261. Thus, McCorkle is not dispositive of the issue presented because it
12 concerned only negligence while choosing to act, not an exercise of discretion to not
13 act. Nor did McCorkle address the immunity provisions provided under Government
14 Code section 844.6, which is the thrust of Defendants' argument.
15          Similarly, in Sanders v. Yuba County, 247 Cal.App.2d 748 (1967), the
16 plaintiff's basis for liability was an alleged failure to summon medical care for eight
17 days after injuring his eye on a metal towel rack attached to his bed. Id., at 750. The
18 court analyzed and harmonized Government Code section 844.6 and
19 contemporaneous revisions to Government Code section 845.6, to determine that the
20 Legislature intended that a public entity shall not be liable for an injury to any
21 prisoner for a failure to provide medical care except as provided under subdivisions
22 (b), (c), and, most relevantly, (d) for failing to summon medical care when the
23 employee knew the prisoner was in need of "immediate medical care" and failed to
24 take reasonable steps to summon such medical care. Id., at 749-55; see, Cal. Gov.
25 Code § 845.6. Thus, Sanders merely reinforces the premise that Defendants are not
26 liable here because the Deputy Defendants took reasonable steps to summon medical
27 care once they were aware that Mr. Willcox needed "immediate medical care,"
28 unlike in Sanders, where deputies did not summon medical care *for eight days*.

There is no dispute that once the Defendants were aware of Mr. Willcox's immediate need for medical attention, it was summoned and incredibly promptly provided. First Am. Compl., ¶¶ 25-27. Plaintiffs have not offered allegations to establish that Mr. Willcox needed immediate medical attention before his suicide attempt, nor that each of the Defendants was aware of that fact. Thus, Plaintiffs' argument that care should have been ongoing before his suicide, but was withheld from him, does not bring this case with the exception to immunity set forth in Government Code section 845.6 as the Legislature has already determined, "in enacting section 845.6, not to require followup or monitoring of medical care." Castaneda, supra, 212 Cal.App.4th at 1074 (2013).

V. **PLAINTIFFS' BANE ACT ARGUMENT CONFUSES THE INTENT TO CAUSE A CONSTITUTIONAL DEPRIVATION WITH THE MEANS BY WHICH IT IS ACCOMPLISHED**

Plaintiffs' Opposition is directed only toward whether a "reckless disregard" for a person's constitutional rights is evidence of specific intent to deprive that person of those rights. This is not at issue by way of this motion.

To properly allege a claim under the Bane Act, the plaintiff must show "(1) intentional interference or attempted interference with a ... constitutional or legal right, and (2) the interference or attempted interference was by *threats, intimidation, or coercion.*" Wiley v. Kern High School District, 107 Cal.App.5th 765, at 11 [emphasis added]. Plaintiffs' argument in Opposition only goes toward the first element, which is not the thrust of Defendant's argument. Plaintiffs ignore the second element entirely. As discussed in the moving papers, there are no allegations by which the Court might infer that the alleged constitutional violations were accomplished by threats, intimidation, or coercion. Rather, all of Plaintiffs' arguments are that the defendants engaged in *inaction* as opposed to action.

///

///

-9-
REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

## VI. CONCLUSION

In light of the foregoing, Defendants respectfully reiterate their request that the Court grant this Motion to Dismiss in its entirety.

DATED: March 14, 2025      CARPENTER, ROTHANS & DUMONT LLP

By:    /s/ *Alexander S. Rynerson*
JILL WILLIAMS
ALEXANDER S. RYNERSON
County of Los Angeles, Deputy Quiroz, Deputy Guerrero, Deputy Jimenez, Sergeant Sanchez, Deputy Gurrola, Deputy Rios and Sergeant Ohandjanian

**DECLARATION OF ALEXANDER S. RYNERSON**

1. I am an attorney at law duly licensed to practice before all courts in the State of California and the Central District of California, among others. If called upon as a witness I can and will testify to the following from my own personal knowledge.

2. On February 7, 2025, I personally accessed the history of filings on the matter of <u>United States of America v. County of Los Angeles, et al.</u>, Case No.: 15-5903 (C.D. Cal. 2015) to investigate the depth and nature of Plaintiffs' reliance upon this settled matter. Attached hereto is a true and correct copy of the parties' stipulated settlement and proposed order from said case, marked as Exhibit A.

I swear under the penalty of perjury that the foregoing is both true and correct. Executed this March 14, 2025, in Lake Arrowhead, California.

_____
Alexander S. Rynerson, Esq.

-1-
REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT

## **ATTESTATION OF WORD COUNT**

Pursuant to Federal Rule of Civil Procedure 27(d)(2)(C), I hereby attest that this Reply is 2,543 words long, excluding the caption, signatures, the supporting Declaration, and this attestation. To arrive at this determination, I relied upon the word-processing program utilized to draft this Reply.

DATED: March 14, 2025                    CARPENTER, ROTHANS & DUMONT LLP


                                         By:   /s/ *Alexander S. Rynerson*
                                                JILL WILLIAMS
                                                ALEXANDER S. RYNERSON
                                                Attorneys for Defendants

ATTESTATION OF WORD COUNT